ENVIRONMENTAL DYNAMICS,
INC., Plaintiff,

v.

ROBERT TYER AND ASSOCIATES,
INC., Robert R. Tyer, and Parsons Engi-
neered Products, Inc., Defendants.

No. C 93–3062–MWB.

United States District Court,
N.D. Iowa,
Central Division.

June 21, 1996.

**1216**

Richard R. Johnson of Kokjer, Kircher, Bowman & Johnson in Kansas City, Missouri, and James L. Kramer of Johnson, Erb, Bice, Kramer, Good & Mulholland, P.C., in Fort Dodge, Iowa, for Plaintiff EDI.

Daniel V. Thompson of Thompson & Howison, L.L.P., in Dallas, Texas, and Stephen G. Kersten of Kersten & Carlson in Fort Dodge, Iowa, for Defendants Robert Tyer Associates, Inc., Robert Tyer, and Parsons Engineered Products, Inc.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................... 1217
  A. Factual Background ................................................. 1217
  B. Procedural History ................................................. 1218
    1. Complaint, amended complaints, and counterclaims ..................... 1218
    2. Dispositive motions and arguments of the parties ...................... 1219
      a. Tyer's motion to dismiss ......................................... 1219
      b. Defendants' March 12, 1996, motion for partial summary judgment ... 1220
      c. EDI's first motion for partial summary judgment ..................... 1220
      d. EDI's motion to dismiss counterclaims ............................. 1221
      e. EDI's supplemental motion for partial summary judgment ............ 1222
      f. EDI's motion for summary judgment as to RTA ..................... 1222
      g. EDI's motion for summary judgment on inequitable conduct defenses ... 1222
II. LEGAL ANALYSIS ...................................................... 1223
  A. Standards For Dispositive Motions ................................... 1223
    1. Which circuit's law applies? ........................................ 1223
    2. What standards apply to EDI's motions to dismiss its own claims? ........ 1224
  B. The Voluntary Dismissal Motions .................................... 1226
    1. Voluntary dismissal pursuant to Fed.R.Civ.P. 41(a) ..................... 1226
    2. Voluntary dismissal pursuant to Fed.R.Civ.P. 15 ....................... 1227
  C. The "Alter Ego" Claim .............................................. 1229
    1. Summary judgment standards ....................................... 1230
    2. Undisputed and disputed facts concerning the "alter ego" claim ........... 1232
    3. Elements of an "alter ego" claim .................................... 1233
      a. The nature of the "alter ego" cause of action ....................... 1234
      b. "Unity" and "injustice" prongs of the "alter ego" analysis ............. 1234
      c. "Federal common law" or "state law"? ............................. 1237
      d. Is there a genuine issue of material fact on the "alter ego" claim? ... 1240
    4. Relitigation and res judicata ....................................... 1240
      a. Relitigation of RTA's liability ..................................... 1240
      b. Res judicata ................................................... 1241
        i. Claim preclusion .......................................... 1242
        ii. Issue preclusion .......................................... 1245
  D. Counterclaims ..................................................... 1247
    1. "Reasonable apprehension" of litigation .............................. 1247
    2. Discretion to decline to hear declaratory judgment actions ............... 1249
IV. CONCLUSION ........................................................ 1250

## MEMORANDUM OPINION AND ORDER REGARDING DISPOSITIVE MOTIONS

BENNETT, District Judge.

The parties to this patent infringement litigation have filed a plethora of dispositive motions. Much of the argument of the parties involves the extent to which a jury verdict of infringement and various judicial decisions in parallel litigation in federal court in Texas should be given res judicata effect in this litigation. The present litigation was stayed during the pendency of the Texas lawsuit. However, the Texas litigation did not involve all of the present defendants. The prompt and coherent disposition of the present litigation has been further complicated by the bankruptcies of one of the corporate defendants and its sole shareholder, prompted by the adverse judgment against the corporate defendant in the Texas litigation. Although the parties have bandied about various principles of patent law and res judicata, making disposition of the motions appear as complicated as slaying Hydra,[1] the court finds that determinative issues, for the most part, lie in other areas.

### I. INTRODUCTION AND BACKGROUND

#### A. Factual Background

This lawsuit arises from claims of infringement of two U.S. patents for wastewater aeration equipment owned by plaintiff Environmental Dynamics, Inc. (EDI). The patents in suit are U.S. Patent No. 4,960,546 ("the '546 patent"), for "Diffuser Mounting Arrangement for Waste Water Aeration System," and U.S. Patent No. 4,563,277 ("the '277 patent"), for "Apparatus for Aerating and Mixing Waste Water." The original complaint alleged that various defendants were infringing the patents or inducing the infringement of the patents as the result of the design, manufacture, sale, and use of wastewater aeration equipment in a municipal wastewater treatment facility of the City of Mason City, Iowa ("the accused Mason City aeration equipment"). The original defendants were Robert Tyer and Associates, Inc. ("RTA"), Robert R. Tyer, individually ("Tyer"), Parsons Engineered Products, Inc. ("Parsons"), the City of Mason City, Iowa ("the City"), and Story Construction Co. ("Story"). The complaint has been twice amended, changing not only the claims asserted but the defendants against whom they are asserted.

RTA, doing business as Aeration Research Co., brought parallel litigation against EDI in United States District Court for the Southern District of Texas seeking a declaratory judgment of invalidity and non-infringement of the patents also in suit here. EDI filed counterclaims in that litigation, asserting infringement of its patents. Following summary denial of RTA's declaratory claims and defenses of inequitable conduct, the Texas litigation proceeded to jury trial only on EDI's infringement claims. The jury verdict was in favor of EDI and the jury awarded damages for infringement against RTA in the sum of $118,000. On March 17, 1995, the Texas district court entered a final judgment awarding EDI damages of $118,000 plus post-judgment interest. Although RTA filed a Notice of Appeal three days later on March 20, 1995, RTA subsequently filed a voluntary bankruptcy petition under Chapter 7 on April 26, 1995. In light of RTA's bankruptcy and the automatic stay in bankruptcy found in 11 U.S.C. § 362, on July 14, 1995, the Federal Circuit Court of Appeals dismissed RTA's appeal without prejudice to its reinstatement within thirty days after the lifting of the stay or conclusion of the bankruptcy proceeding.

1. Hydra, sometimes called the "Lernean hydra," was a many-headed serpent (usually described as having nine heads) slain by Hercules, who had to overcome the problem that every time he cut off one of Hydra's heads, it was replaced by two others. Hercules solved the problem by convincing his charioteer to burn the stumps as soon as Hercules knocked off one of Hydra's heads, thus preventing the double regrowth. *See, e.g., Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend* 615 (Maria Leach, ed., Funk & Wagnalls, 1972); Thomas Bullfinch, *Mythology* 144 (Fuller abridged ed. 1959).

After it had obtained a judgment and RTA had declared bankruptcy, EDI sought leave of the Texas court pursuant to *Fed.R.Civ.P.* 15 to amend its complaint there to add Tyer as a defendant. The Texas court summarily denied that motion to amend. Owing to RTA's bankruptcy, EDI has never recovered its judgment in the Texas litigation.

During the pendency of the dispositive motions considered here, the automatic stay in RTA's bankruptcy was lifted, thus allowing the present litigation to proceed against RTA. However, the lifting of that bankruptcy stay was not the end of the complications to disposition of the pending motions, as Tyer then declared personal bankruptcy. Tyer's bankruptcy has now been dismissed, so no party is currently in bankruptcy. Further factual background, including both undisputed and disputed facts, will be presented in pertinent portions of this ruling. However, the court turns first to consideration of the involved procedural history of this litigation and the arguments of the parties in their various dispositive motions.

### B. Procedural History

#### 1. Complaint, amended complaints, and counterclaims

The original complaint in this lawsuit was filed on September 7, 1993. Following answers by all parties and the court's denial of EDI's motion for a preliminary injunction, this action was stayed upon the agreement of the parties pending resolution of the related proceedings brought in federal court in Texas or until September 1, 1994, whichever came first.

Status reports on the Texas litigation were filed in this district during the pendency of matters in Texas federal court and no other activity occurred in this district until completion of the Texas litigation. On June 12, 1995, RTA filed a suggestion of bankruptcy in this case. On June 16, 1995, this court entered a scheduling order for discovery, designation of experts, and dispositive motions in this lawsuit. In light of the decision in the Texas litigation and RTA's bankruptcy, EDI filed a First Amended Complaint on September 21, 1995, which was answered on October 3, 1995. A stipulation for dismissal with prejudice of all claims by EDI against defendants Story and the City was filed on January 10, 1996. EDI then obtained leave to file a Second Amended Complaint on February 20, 1996, which names only RTA, Tyer, and Parsons as defendants. Defendants Tyer and Parsons answered the amended complaint on March 11, 1996. RTA, however, remained in bankruptcy, and has made no answer to the Second Amended Complaint, although the bankruptcy stay as to it has now been lifted. It is the Second Amended Complaint and the answer and counterclaims thereto that are at issue in the various dispositive motions presently before the court.

Count I of the Second Amended Complaint asserts patent infringement claims against the three remaining defendants. The Second Amended Complaint adds a new Count II against defendant Tyer only, seeking to hold Tyer liable for the judgment against RTA obtained in the Texas litigation. The defendants' answer asserts affirmative defenses, including invalidity and unenforceability of the patents in suit and inequitable conduct of EDI in the prosecution of the patent applications. It also asserts three counterclaims. The first counterclaim, by defendant Tyer, seeks declaratory judgment of the invalidity, unenforceability, and non-infringement of the '277 and '546 patents as against "certain redesigned products recently developed by Tyer." Answer to Second Amended Complaint, ¶ 17. The counterclaim alleges that Tyer has demanded that EDI state that the redesigned products do not infringe its patents or sue or otherwise attempt to enforce the patents against the redesigned equipment, but that EDI has refused to do either. *Id.* The second counterclaim, also by defendant Tyer, alleges, albeit vaguely, a controversy concerning Tyer's "right to associate with companies that make and sell systems of the type alleged by Plaintiff herein to infringe the '277 and '546 patents." *Id.* at ¶ 19. It is unclear what relief is requested on this counterclaim. The third counterclaim, asserted by defendant Parsons, also seeks declaratory judgment that its sales of aeration systems made by Tyer do not infringe EDI's patents. *Id.* at ¶ 20. EDI has never answered the counterclaims, but instead has moved to dismiss them for failure

to state a claim and for lack of subject matter jurisdiction.

At some point, the automatic stay in bankruptcy on litigation against RTA was lifted. However, on April 25, 1996, Tyer filed a notice of the filing, on April 19, 1996, of his own bankruptcy petition and Tyer therefore invoked the automatic stay in bankruptcy as to him. However, on May 30, 1996, Tyer filed a notice of the dismissal of his bankruptcy on May 28, 1996. Thus, no stay in bankruptcy currently presents any impediment to disposition of this litigation as to any party.

Although trial was at one time set in this matter for April 1, 1996, the deadlines for discovery and dispositive motions were continued past that trial date. Trial is currently reset for September 23, 1996, in Fort Dodge, Iowa. The last deadline for dispositive motions expired on June 1, 1996. On September 26, 1994, during the period of the stay pending disposition of the Texas litigation, this matter was referred to Chief Magistrate Judge John A. Jarvey for all pretrial matters, including dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C), and N.D.Ia.LR 32. However, on April 17, 1996, following the filing of some of the dispositive motions, the referral to the magistrate judge was terminated and the undersigned will therefore decide all of the pending dispositive motions.

### 2. Dispositive motions and arguments of the parties

There are now no less than seven dispositive motions pending in this matter. Two were filed by the defendants, and five, including one supplement asserting new grounds for a prior motion, were filed by the plaintiff. Several of the motions address the same claims or counterclaims of the parties, but from different sides or different procedural footings. As a general characterization, the dispositive motions assert that the principal areas of contention are the following: (1) whether Count II states a viable cause of action, whether if viable, the plaintiff has properly stated the claim it asserts is presented in that count, and whether either party is entitled to summary judgment on

that count; (2) the viability and possible summary disposition of all or any part of defendants' inequitable conduct defenses; (3) the viability of the defendants' counterclaims for declaratory judgment; and (4) whether any infringement claim need be asserted against defendant RTA in this litigation. Woven through and around these issues, at least as the parties view them, are questions of the extent to which the decisions of the Texas court are res judicata here. Although the court's identification of the determinative issues differs, the court will first consider each of the motions and at least a summary of the arguments of the parties in support of or opposition to those motions.

#### a. Tyer's motion to dismiss

On March 12, 1996, Tyer moved to dismiss new Count II pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, or, in the alternative, moved for partial summary judgment on that claim. Tyer contends that Count II asserts a "novel cause of action" that seeks to substitute him as a judgment debtor on the judgment of another court against RTA on the grounds that he is the "alter ego" of the corporation. Tyer asserts that the Texas court decided and rejected this theory of liability, and therefore the claim is barred by res judicata and federal comity here, because the Texas court denied EDI's post-judgment motion to amend its complaint to add Tyer as a defendant.

EDI asserts that there is nothing novel about a claim to hold a sole shareholder liable for the debts of his corporation under the theory that the corporation is the "alter ego" of the individual shareholder and that "piercing the corporate veil" is therefore appropriate. EDI asserts that neither res judicata nor federal comity is applicable, because the Texas court denied a Rule 15 motion to amend to add Tyer as a defendant in the Texas action after judgment had been entered against RTA. In its motion to amend, EDI requested that the amendment relate back to the filing of the original complaint. EDI sought to add Tyer as a defendant without any reference by anyone, including the court, to "alter ego" or "piercing the corporate veil." Thus, EDI asserts, neither

its claim in Count II nor the issues involved in its disposition were considered or decided by the Texas court.

Tyer counters that EDI's claim just isn't what EDI says it is, but is instead an attempt to have this court enter judgment of another court against him, which Tyer asserts this court cannot do.

### b. Defendants' March 12, 1996, motion for partial summary judgment

On March 12, 1996, "defendants," presumably only Tyer and Parsons, because RTA was then subject to the stay in bankruptcy, filed another dispositive motion, seeking partial summary judgment on the issue of the materiality of certain prior art, the so-called "Nokia" and "Cal–Am" devices, relevant to their defense of inequitable conduct against infringement of the '546 patent. The motion further seeks a bifurcation of the trial on the remaining issue of the inequitable conduct defense, intent, which is triable to the court, in the interests of economy and efficiency. The defendants contend that in a re-examination of the '546 patent after the Texas judgment was entered, the patent examiner expressly found the prior art on which defendants rely to be material, and defendants' own experts concur. Thus, defendants contend that the undisputed facts now demonstrate the materiality of the prior art in question.

EDI resists this motion first on the ground that the Texas court has already dismissed the inequitable conduct defense, rendering that defense res judicata. However, if the issue can be relitigated here, EDI asserts that there is, at a minimum, a genuine issue of material fact concerning the materiality of the Nokia and Cal–Am prior art, because EDI's own experts dispute the materiality of the claimed prior art. EDI also asserts that a bifurcation of trial would increase the expense of this litigation, because its attorneys, experts, and witnesses would be required to travel to Iowa and to present evidence twice, not just once.

In their reply, the defendants assert that there is an exception to any res judicata effect of the Texas decision on materiality, because the Texas judgment was rendered before the re-examination of the '546 patent by the Patent and Trademark Office (PTO). The defendants also assert that EDI's efforts to escape the materiality of the Nokia and Cal–Am prior art are factually unpersuasive. Finally, as to this motion, the defendants assert that a bifurcation of proceedings will indeed result in efficiencies, because they will prevail on this defense in a bench trial on inequitable conduct, eliminating the need for a second jury trial on any other issue.

### c. EDI's first motion for partial summary judgment

The remaining five dispositive motions were filed by plaintiff EDI. On March 20, 1996, EDI filed a motion, which the court finds to be on a most peculiar procedural footing, although it seeks a most salutary end. EDI has moved "under Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment dismissing the action between EDI and defendants Robert Tyer and Parsons Engineered Products, Inc., including all claims and counterclaims," and for summary judgment on EDI's claim to hold Tyer liable in the amount of $118,000 for the judgment debt of RTA. Plaintiff's March 20, 1996, Motion For Partial Summary Judgment, p. 1. The court is unaware of authority under Rule 56 for a plaintiff to dismiss its own claims, but the court will explore that question later. EDI contends in this motion that RTA's infringement of the '277 and '546 patents is res judicata as the result of the Texas decision, and that Tyer is in privity with RTA, as he totally dominated RTA as its sole shareholder and sole representative at trial. As to defendant Parsons and Parsons's counterclaim, EDI asserts that there is no real dispute between the parties, because it will dismiss its claims, which were at most de minimis. Therefore, EDI asserts that there is no controversy and therefore no grounds for Parsons's declaratory judgment claim. EDI also asserts that Parsons is being used as Tyer's "litigating agent" to engage in procedural fencing to attack the Texas judgment, because Tyer is indemnifying Parsons in this litigation. EDI contends that Parsons is subject to indemnitee/indemnitor estoppel. Alternatively, EDI asserts that

the court should simply decline, in its discretion, to entertain Parsons's declaratory judgment action.

In response, defendants concede that Tyer and RTA are in privity, and that the Texas litigation involved identical issues of infringement, but they contend that an exception to the doctrine of res judicata is applicable here. Tyer and RTA assert that RTA has been prevented by EDI's procedural jockeying from pursuing an appeal of the Texas judgment and that the PTO has significantly added to the prosecution history of the '546 patent, thus warranting a new consideration of their inequitable conduct defense, pursuant to Restatement (Second) of Judgments § 28. Furthermore, Tyer asserts that genuine issues of material fact preclude summary judgment on EDI's "alter ego" claim, because Tyer and RTA always observed all of the corporate formalities justifying limited liability of a shareholder in this case. As to EDI's claims against Parsons, Parsons contends that dismissal is appropriate, but that its counterclaims are substantial, not de minimis, and EDI's offer to dismiss its infringement claims is not the sort of general release eliminating grounds for a declaratory judgment action.

In its reply brief, EDI asserts that there are no applicable exceptions to res judicata Tyer can raise here. EDI asserts that there was nothing unusual about the patent reexamination, which ultimately confirmed the patentability of the invention identified in the '546 patent. EDI specifically attacks Tyer's contentions regarding what the examiner held were grounds for confirmation of the patent. EDI asserts that Tyer's concession that he is in privity with RTA and that the issues involved in the litigation are identical "are all that EDI must prove to recover against Tyer." Reply Brief Of Plaintiff On Its [March 20, 1996] Motion For Partial Summary Judgment, p. 4. EDI also contends that far from any of its actions impeding RTA's appeal of the Texas judgment, the appeal was dismissed by the Federal Circuit Court of Appeals after the appellate court *sua sponte* raised the issue of the applicability of the bankruptcy stay. EDI points out that RTA could have sought to have the stay

lifted in order to pursue its appeal, but never did so. Finally, as to Parsons, EDI reasserts its contention that it has no intention of suing Parsons and all claims between those two parties should be dismissed.

### d. EDI's motion to dismiss counterclaims

EDI's next motion, filed on March 25, 1996, is to dismiss Tyer's and Parsons's counterclaims for lack of subject matter jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1) and, as to Tyer, for failure to state a claim pursuant to *Fed.R.Civ.P.* 12(b)(6). As to Tyer, EDI asserts first that there are no jurisdictional allegations in the counterclaims in contravention of *Fed.R.Civ.P.* 8(a)(1). EDI asserts that there is no actual controversy as to any "redesigned" products, because it has never charged any such infringement and has no intention of doing so, finding adequate protection in the Texas injunction enjoining Tyer from making infringing products. EDI asserts that neither Tyer's letters to EDI demanding to be sued over the "redesigned" products nor Tyer's "twisted" reasoning that EDI's refusal to sue establishes the necessary ground, a reasonable apprehension of a suit for patent infringement, for Tyer's declaratory judgment claim based on "redesigned" products. As to the second counterclaim, EDI asserts that Tyer's allegations of interference with his right to associate with companies making or selling aeration equipment is so vague as to defy understanding. However, EDI asserts that it has never engaged in any such interference and is again satisfied that the Texas injunction means no such interference will ever be necessary. To the extent the claims relate to designs found to infringe by the Texas court, EDI asserts res judicata of those issues. As to Parsons, EDI reiterates that there is no current dispute sustaining Parson's declaratory judgment claim.

The defendants' resistance to this motion is not made in a separate response, but instead appears in section III of their resistance to EDI's first summary judgment motion. However, section III of that brief addresses only the viability of Parsons's counterclaims. Parsons accepts with alacri-

ty EDI's offer to dismiss EDI's claims against Parsons, but asserts that continued uncertainty about what equipment made by Tyer it can or cannot sell justifies its own declaratory judgment claim.

EDI has filed no reply brief, presumably because it did not recognize that defendants had ever responded to the motion. Indeed, the court cannot find that Tyer has ever resisted summary judgment as to his second counterclaim, although resistances to dismissal or summary judgment on his first counterclaim are suggested in his other filings.

### e. EDI's supplemental motion for partial summary judgment

EDI's third dispositive motion, filed May 13, 1996, is in fact a supplement to its March 20, 1996, motion for partial summary judgment to "dismiss" all claims and counterclaims between EDI and defendant Parsons. EDI asserts that, owing to Tyer's personal bankruptcy, Tyer's mother, rather than Tyer himself, is now financing Parsons's participation in this lawsuit, contrary to the doctrines of maintenance and champerty.

On May 29, 1996, Parsons filed a response to the supplemental motion, and on May 30, 1996, filed an amendment to that supplemental response. Parsons contends that financing of its participation in this litigation by Tyer's mother was only a temporary, unusual result of Tyer's bankruptcy and his undertaking to indemnify Parsons, but that the arrangement in question has now ended, as Tyer is no longer in bankruptcy.

### f. EDI's motion for summary judgment as to RTA

EDI's fourth dispositive motion, filed May 16, 1996, is a long-promised motion for summary judgment against defendant RTA upon RTA's emergence from the protection of the bankruptcy stay. This motion, like EDI's prior motion for partial summary judgment against Tyer and Parsons, seeks to "dismiss" all claims and counterclaims between EDI and RTA. However, whatever the peculiarity of the procedural footing of the motion, EDI asserts that any claims as between these two parties were fully litigated in Tex-

as federal court, presenting a "textbook" case of res judicata.

RTA has responded to the motion, which it describes as a "housekeeping" measure, asserting that its dismissal from the litigation will simplify things, but contending, in the alternative, that it is entitled to an exception to res judicata for the same reasons Tyer has asserted any patent infringement claims as to him fall within an exception. In other words, RTA also asserts that unusual circumstances warrant revisiting RTA's assertions of inequitable conduct as barring EDI's claims of infringement.

### g. EDI's motion for summary judgment on inequitable conduct defenses

Finally, EDI has moved for partial summary judgment "dismissing" RTA's and Parsons's "inequitable conduct" defenses. EDI asserts that such a defense was rejected in the Texas action and is therefore res judicata. Furthermore, EDI asserts that the allegedly material prior art not disclosed in prosecution of the patents, the "Nokia" and "Cal–Am" prior art in the case of the '546 patent, and the "Air–Aqua" prior art in the case of the '277 patent, were not material, but merely cumulative of prior art references disclosed in prosecution of the patent applications.

Defendants filed a resistance to EDI's motion for summary judgment on defendants' inequitable conduct defenses, asserting a genuine issue of material fact as to the materiality of the "Air–Aqua" prior art to the '277 patent. The materiality of the "Air–Aqua" prior art, they assert, is established by the declarations of two of their experts. Defendants assert that Tyer and Parsons are ready to litigate the issue of inequitable conduct, but that RTA should be dismissed from this litigation as a "housekeeping" matter. In a short reply brief, EDI reaffirms its position that the inequitable conduct issues are res judicata and should not be relitigated here. EDI also asserts that the underlying patent claim is also res judicata as to Tyer, because he was in privity with RTA, so that the patent claims should be dismissed as moot in light of the prior Texas action.

No party has requested a hearing on any of these dispositive motions. Although these arguments suggest that disposition of the motions is a complicated matter, involving consideration of several issues of patent law and subtle applications of the doctrine of res judicata, the court finds that, ultimately, the motions may all be disposed of on relatively uncomplicated grounds, once procedural irregularities are sorted out.

## II.  LEGAL ANALYSIS

### A.  Standards For Dispositive Motions

The parties' dispositive motions are brought as motions to dismiss, for failure to state a claim pursuant to *Fed.R.Civ.P.* 12(b)(6) and for lack of subject matter jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1), and as motions for partial summary judgment, pursuant to *Fed.R.Civ.P.* 56. Some of EDI's motions seek dismissal of some of EDI's own claims, which the court finds cannot be brought on the procedural footing asserted by EDI, *i.e.*, pursuant to Rule 56. Therefore, the court must discover the proper procedural footing and applicable standards for such voluntary dismissal motions. Furthermore, because this is a patent infringement case, and any appeal will therefore be taken to the Federal Circuit Court of Appeals, the first question the court must answer is, which circuit's law establishes the standards for these dispositive motions?

### 1.  Which circuit's law applies?

In answer to this initial question, the Federal Circuit Court of Appeals has repeatedly held that if issues are not unique to its exclusive jurisdiction, it will defer to the law of the regional circuit in which the district court sits. *See, e.g., Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed.Cir.1995) (trade dress issues called for application of regional circuit's law, *i.e.*, Eleventh Circuit law); *Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1263 (Fed.Cir.) (same), *cert. denied*, —— U.S. ——, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995); *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1200 (Fed.Cir.1994) (Lanham Act claims called for application of Eighth Circuit law), *cert. denied*, —— U.S. ——, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995);

*Mars, Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1371 (Fed.Cir.1994); *Jurgens v. McKasy*, 927 F.2d 1552, 1563 n. 6 (Fed.Cir.) (applying Eighth Circuit law to issues of unfair competition over which Federal Circuit did not have exclusive jurisdiction), *cert. denied*, 502 U.S. 902, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991).

In *Mars, Inc.*, the Federal Circuit Court of Appeals clarified when deference to the regional circuit's law is appropriate and when it is not:

> When an issue before us pertains to a matter not unique to our exclusive appellate jurisdiction, our established practice has been to defer to the discernable law of the regional circuit in which the district court sits. Such deference, however, is inappropriate when an issue involves substantive questions coming exclusively within our jurisdiction, the disposition of which would have a direct bearing on the outcome.
>
> In this case, review of the propriety of the district court's dismissal for lack of jurisdiction necessarily requires consideration of facts and resolution of legal principles that bear an essential relationship to matters committed to our exclusive control. The issue whether the district court had jurisdiction to hear Mars' claim of Japanese patent infringement is of importance to the development of the patent law and is clearly a matter that falls within the exclusive subject matter responsibility of this court. Thus, we are not bound by the law of the [regional] circuit in deciding this case. Notwithstanding that conclusion, "[w]e may, of course, look for guidance in the decisions of the [regional circuit], as well as those of other courts.

*Mars, Inc.*, 24 F.3d at 1371 (internal citations and quotation marks omitted). However, a prior decision makes clear that Federal Circuit law is not necessarily applicable to *any* subject matter jurisdiction challenge in a patent case. *See Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1580 (Fed.Cir.1993) (dismissal pursuant to *Fed.R.Civ.P.* 12(b)(1) on "ripeness" grounds required application of regional circuit's law, because Federal Cir-

cuit law governs review of a decision to dismiss a patent infringement suit only when justiciability of the controversy is not in question), *cert. denied,* —— U.S. ——, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994). Nor is a simple dichotomy between "procedural matters," governed by the regional circuit's law, and "substantive matters," governed by Federal Circuit law, appropriate, because even "procedural" matters may involve questions that fall within the Federal Circuit's exclusive jurisdiction. *See, e.g., Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.,* 12 F.3d 1080, 1082 (Fed.Cir.1993) (a Rule 60(b) is generally considered under the law of the regional circuit, "because such rulings commonly involve procedural matters that are not unique to patent law," but the Federal Circuit applied its own law in this case, "because our review of the district court's Rule 60(b) ruling turns on substantive matters that are unique to patent law"); *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.,* 998 F.2d 985, 987 (Fed.Cir.1993) ("As a general rule, we review procedural matters under the law of the regional circuit in which the district court sits," and "[a]dditionally, we defer to the law of the regional circuit when addressing substantive legal issues over which we do not have exclusive subject matter jurisdiction," and applying Tenth Circuit law to issuance of a preliminary injunction in a trademark case); *Wang Labs., Inc. v. Applied Computer Sciences, Inc.,* 958 F.2d 355, 357 (Fed.Cir.1992) (generally, on procedural matters, the Federal Circuit follows the law of the regional circuit, but it will not do so on issues of its own appellate jurisdiction, although it may look for guidance to the law of the regional circuit). Rather, the test, as stated in *Mars, Inc.,* is whether the question presented "necessarily requires consideration of facts and resolution of legal principles that bear an essential relationship to matters committed to [the Federal Circuit's] exclusive control." *Mars, Inc.,* 24 F.3d at 1371.

### 2. *What standards apply to EDI's motions to dismiss its own claims?*

The court has observed that EDI's motions for "summary judgment" seeking to "dismiss" its own claims do not appear to be authorized by any reading this court can give

the rule of civil procedure upon which they are based, *Fed.R.Civ.P.* 56. Furthermore, although EDI's motions for "summary judgment" seek to "dismiss" "all" claims and counterclaims between itself and the three defendants, it is clear from EDI's "summary judgment" motion regarding Tyer that EDI seeks not dismissal, but summary adjudication in its favor of its "alter ego" claim against Tyer stated in new Count II. Thus, EDI seeks dismissal of some, but not all claims in this lawsuit, although it does seek to dismiss all claims against two defendants, Parsons and RTA. This court must therefore determine what authority provides for the plaintiff's voluntary dismissal of all its own claims against particular defendants. Furthermore, the court must determine what authority provides for the plaintiff's voluntary dismissal of fewer than all of its claims against any one defendant.

▪ The proper procedural footing for voluntary dismissal appears to be a purely procedural matter that in no way "necessarily requires consideration of facts and resolution of legal principles that bear an essential relationship to matters committed to [the Federal Circuit's] exclusive control." *Mars, Inc.,* 24 F.3d at 1371. This court can therefore properly be guided by the decisions of the regional circuit in which it sits, the Eighth Circuit. *Id.* Nonetheless, the court finds that guidance on this question comes, in the first instance, from the Federal Circuit Court of Appeals.

Although one federal rule of civil procedure, *Fed.R.Civ.P.* 41, specifically provides for voluntary dismissals, in *Gronholz v. Sears, Roebuck and Co.,* 836 F.2d 515 (Fed. Cir.1987), the Federal Circuit Court of Appeals noted that Rule 41(a) refers to dismissal of an "action," not to dismissal of a "claim." *Gronholz,* 836 F.2d at 517. The court noted that the reference to "action" in Rule 41(a)(1) and (2) contrasts with the reference to "an action or of any claim" in Rule 41(b). *Id.* at 518 (citing *Smith Kline & French Labs. v. A.H. Robins Co.,* 61 F.R.D. 24, 25–29 (E.D.Pa.1973)). The court embraced the analysis of various courts holding that when Rule 41(a) refers to dismissal of an "action," there is no reason to suppose that

the term is intended to include the separate claims which make up an action, because when dismissal of a claim is intended, as in Rule 41(b), the concept is spelled out in the plain language of the rule. *Id.* (citing cases so holding). The *Gronholz* court quoted the following from *Management Investors v. United Mine Workers,* 610 F.2d 384, 394–95 (6th Cir.1979):

> But while often dubbed a Rule 41(a) voluntary dismissal, the procedure [whereby a court grants plaintiff's motion to dismiss one count of a multi-count complaint] is more properly viewed as a Rule 15 amendment to the complaint.

*Gronholz,* 836 F.2d at 518. The court found that the procedural footing of the motion could make a difference, as dismissal of all federal claims by Rule 15 amendment could deprive a federal court of jurisdiction over the action, or deprive the Federal Circuit Court of Appeals of appellate jurisdiction. *Id.* Whatever the effect of a voluntary "dismissal" of less than all claims, the court held that such a dismissal "constituted an amendment of [the plaintiff's] complaint." *Id.*

The Eighth Circuit Court of Appeals, which states the law of the regional circuit in which this court sits, appears never to have embraced or rejected the distinction stated in *Gronholz.* However, courts of other regional circuits have since used similar reasoning to conclude that Rule 41(a) does not provide for the voluntary dismissal of less than all claims against any defendant. In *Gobbo Farms & Orchards v. Poole Chem. Co., Inc.,* 81 F.3d 122 (10th Cir.1996), the Tenth Circuit Court of Appeals very recently made the same distinction:

> [Rule 41(a) ] speaks to dismissal of an action, not just a claim within an action. [Plaintiff] offers no authority, and we have found none, to support its contention that Rule 41(a) applies to dismissal of less than all claims in an action In fact, other circuits and at least one district court in this circuit have specifically held to the contrary. *See Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1392 (9th Cir.1988); *Management Investors v. United Mine Workers,* 610 F.2d 384, 394 n. 22 (6th Cir.1979); *Exxon Corp. v. Maryland Casualty Co.,*

599 F.2d 659, 662 (5th Cir.1979); *In Re Wyoming Tight Sands Anti Trust Cases,* 128 F.R.D. 121, 123 (D.Kan.1989).

*Gobbo Farms,* 81 F.3d at 123. Similarly, the Ninth Circuit Court of Appeals recently reaffirmed that "Rule 15, not Rule 41(a) governs the situation when a party dismisses some, but not all, of its claims." *General Signal Corp. v. MCI Telecommunications Corp.,* 66 F.3d 1500, 1513 (9th Cir.1995) (citing *Ethridge,* 861 F.2d at 1392, as well as *Gronholz* and *Management Investors* ), *cert. denied,* —— U.S. ——, 116 S.Ct. 1017, 134 L.Ed.2d 97 (1996). In *Ethridge,* the Ninth Circuit Court of Appeals wrote that "we agree with those courts that have held a plaintiff may not use Rule 41(a)(1)(i) to dismiss, unilaterally, a single claim from a multi-claim complaint." *Ethridge,* 861 F.2d at 1392 (citing, *inter alia, Management Investors* and *Exxon Corp.*). The court in *Ethridge* developed further the proper basis for the voluntary dismissal of less than all claims:

> Each of these cases relies on the Moore treatise on federal procedure, which convincingly argues that Federal Rule of Civil Procedure 15(a) is the appropriate mechanism "[w]here a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants." 5 J. Moore, J. Lucas & J. Wicker, *Moore's Federal Practice* ¶ 41.06–1, at 41–83 to –84 (1987). The cases relied on by Ethridge are not to the contrary because they either involve the use of Rule 41 to effect a complete dismissal as to all defendants, *see, e.g., Miller v. Reddin,* 422 F.2d 1264, 1266 (9th Cir.1970), or a partial dismissal of all claims against one codefendant, *see, e.g., Brown v. Texas & Pac. R.R.,* 392 F.Supp. 1120 (W.D.La.1975).

*Ethridge,* 861 F.2d at 1392. As did the court in *Ethridge,* courts to consider the question have generally concluded that Rule 41(a) permits voluntary dismissal of all claims against a particular defendant in a multi-defendant action. *See, e.g., Pedrina v. Chun,* 987 F.2d 608, 609 & n. 1 (9th Cir.1993) (holding that "Rule 41(a)(1) allows a plaintiff to dismiss without a court order any defendant who has yet to serve an answer or a motion for sum-

mary judgment" because "[p]ermitting a plaintiff to dismiss fewer than all of the named defendants is consistent with th[e] purpose" of the rule to allow "disengagement" at the early stages of a suit). The court in *Pedrina* noted a split in the circuits on the question, and found that the Eighth Circuit Court of Appeals, this court's regional circuit, was on the side of the split approving use of Rule 41(a) to dismiss less than all defendants from an action, citing *Johnston v. Cartwright*, 355 F.2d 32, 39 (8th Cir.1966). *Pedrina*, 987 F.2d at 609. However, only the Second Circuit Court of Appeals appeared to view Rule 41(a) as requiring dismissal of an entire controversy, not just some of the defendants in it, and that circuit had not considered the question recently. *Id.* (citing as the dissenting decision *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105, 108 (2d Cir.), *cert. denied*, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953)). The conclusion that Rule 41 permits dismissal of some but not all defendants from the lawsuit, this court observes, is reconcilable with the language of the rule, because an entire "action" against a particular defendant is voluntarily dismissed, not just some of the claims against that defendant. *Fed.R.Civ.P.* 41(a)(1) and (2) (referring only to "an action," not to "a claim" or "claims"); *but see Concha v. London*, 62 F.3d 1493, 1506 (9th Cir.1995) (stating in dicta that "[T]he plaintiff may dismiss either some or all of the defendants—or some or all of his claims—through a Rule 41(a)(1) notice," citing *Pedrina*, 987 F.2d at 609).[2]

■ On the strength of these authorities and the reasoning upon which they rely, this court concludes that the proper procedural footing for EDI's motions to "dismiss" all of its own claims against defendants Parsons and RTA is not Rule 56, but Rule 41(a)(2). However, the authority for the dismissal of one of two claims against defendant Tyer is neither Rule 56 nor Rule 41(a)(2), but Rule 15.

### B. The Voluntary Dismissal Motions

■ Having established the procedural footing of EDI's motions for voluntary dismissal, the court must next determine the standards applicable to those motions and their proper disposition. Motions for voluntary dismissal pursuant to Rule 41(a) and for leave to amend pursuant to Rule 15 are both consigned to the court's sound discretion, but the standards for each kind of motion bear discussion here.

#### 1. Voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)

■ Because answers have been received and no stipulation for dismissal signed by all parties has been presented, voluntary dismissal of all claims against Parsons and RTA must be sought pursuant to *Fed. R.Civ.P.* 41(a)(2), and requires the leave of the court. *Fed.R.Civ.P.* 41(a)(1) and (2). Furthermore, the dismissal, if granted, shall be "upon such terms and conditions as the court deems proper." *Fed.R.Civ.P.* 41(a)(2). A district court's decision on a Rule 41(a)(2) motion will be reversed only if the appellate court finds that the district court abused its discretion. *Metropolitan Fed. Bank of Iowa v. W.R. Grace & Co.*, 999 F.2d 1257, 1262 (8th Cir.1993). Granting voluntary dismissal is not an abuse of discretion simply because the opposing party has a summary judgment motion pending, although that is a factor the court may take into account in ruling on the motion for voluntary dismissal. *Id.* Instead, the court must be concerned that the voluntary dismissal impose no legal prejudice on any party. *Id.* at 1262–63.

■ The court finds no legal prejudice here, and RTA and Parsons have asserted none, instead embracing the offer of dismissal of the claims against them. The pendency of defendant Parsons's counterclaim in this case is not affected by voluntary dismissal of

**2.** The court suspects that the decision in *Concha* is an inadvertent overstatement of the holding of *Pedrina*, which nowhere discusses the applicability of Rule 41 to "some or all claims," except in the context of dismissal of all claims against a particular defendant. Whether inadvertent or not, the statement that Rule 41(a) permits dis- missal of "some or all of his claims" is contrary to the express language of the rule and the decisions cited in the body of this opinion, including the Ninth Circuit's own decisions in *General Signal Corp.*, 66 F.3d at 1513, and *Ethridge*, 861 F.2d at 1392.

the underlying claims, because, pursuant to *Fed.R.Civ.P.* 41(a)(2), a counterclaim that can remain pending for independent adjudication poses no impediment to voluntary dismissal of the underlying claims. Furthermore, the assertions of new evidence undercutting decisions of the Texas court on defenses to infringement may properly be brought to the attention of the Texas court by motions by RTA for relief from the judgment. Thus, no prejudice to any party is apparent. Indeed, far from causing prejudice to any party, all parties will benefit from the clarification and narrowing of issues for trial in this matter as the result of the dismissal of claims following disposition of the parallel Texas litigation.

The Eighth Circuit Court of Appeals recently offered the following observations concerning whether dismissal pursuant to this rule is with or without prejudice:

> Under Rule 41(a)(2), dismissals sought by the plaintiff are without prejudice unless the district court's order specifies otherwise. Thus, Rule 41(a)(2) implicitly permits the district court to dismiss an action with prejudice in response to a plaintiff's motion for dismissal without prejudice. When a plaintiff requests dismissal without prejudice and the district court intends to dismiss with prejudice, however, the district court must give the plaintiff notice of its intention and a chance to withdraw the request and proceed with litigation.

*Jaramillo v. Burkhart*, 59 F.3d 78, 79 (8th Cir.1995) (internal citations omitted). In this case, however, EDI has expressly stated that it intends dismissal with prejudice of its claims against Parsons and RTA, in the former case, because its claims against Parsons were at best de minimis and, in the case of both defendants, because it perceives ade-

quate protection can be obtained under EDI's Texas injunction. The dismissal of all claims against RTA and Parsons here therefore will be with prejudice at the request of the plaintiff.[3] The court holds that plaintiff EDI's motions for partial "summary judgment" identified in subsections I.B.2.c. and f., and here construed as motions for voluntary dismissal pursuant to *Fed.R.Civ.P.* 41(a)(2), are granted as to defendants RTA and Parsons and all claims against RTA and Parsons are dismissed with prejudice. EDI's supplement to the motion for summary judgment against Parsons, identified in subsection I.B.2.e., is denied as moot, because of the granting of the principal summary judgment motion identified in subsection I.B.2.c.

As a further consequence of dismissal of all claims as to Parsons and RTA, other motions of the parties are also mooted. The dismissal of all claims against Parsons and RTA moots their affirmative defenses to those claims. Therefore, the defendants' March 12, 1996, motion for partial summary judgment on the inequitable conduct defense and for bifurcation of trial on inequitable conduct issues, identified in subsection I.B.2.b. of this ruling, is denied as moot as to defendant Parsons and, to the extent RTA ever adopted that motion upon emergence from the stay in bankruptcy, as to defendant RTA. Similarly, EDI's last dispositive motion, its motion for partial summary judgment on the inequitable conduct defenses, identified in subsection I.B.2.g. of this ruling, is also denied as moot as to defendants Parsons and RTA.

### 2. Voluntary dismissal pursuant to Fed.R.Civ.P. 15

As the court observed above, EDI's motions for partial summary judgment "dis-

---

**3.** In a brief but pithy decision, the Eighth Circuit Court of Appeals recently recognized that when the court grants a voluntary dismissal, it will "typically impose the condition that plaintiff pay the defendant the reasonable attorney's fees incurred in defending the suit." *Belle–Midwest, Inc. v. Missouri Property & Cas. Ins. Guarantee Ass'n*, 56 F.3d 977, 978–79 (8th Cir.1995) (citing *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir.1994)). However, in *Belle–Midwest, Marlow*, and another Eighth Circuit Court of Appeals decision upon which *Belle–Midwest* relies, *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 972

(8th Cir.1984), the dismissal was without prejudice, therefore subjecting the defendant to the possibility of a subsequent suit on the same issues. The dismissal here is with prejudice following parallel litigation in Texas obviating the need for much of the present litigation. The court does not believe it abuses its discretion in these circumstances by refusing to condition dismissal *with prejudice* on EDI's payment of any attorneys fees of the defendants. There will be no order for payment of attorneys fees as a condition to EDI's voluntary dismissal of its claims against Parsons and RTA.

missing" some, but not all, of its claims against defendant Tyer must be construed as having been brought not pursuant to *Fed. R.Civ.P.* 41(a)(2), but pursuant to *Fed. R.Civ.P.* 15. *General Signal Corp.*, 66 F.3d at 1513; *Ethridge*, 861 F.2d at 1392; *Gronholz*, 836 F.2d at 518. Because the court does not perceive that EDI's motion, construed as a motion to amend, to drop the patent infringement claim against defendant Tyer and to add a new, non-patent claim, whatever that claim may otherwise be, "necessarily requires consideration of facts and resolution of legal principles that bear an essential relationship to matters committed to [the Federal Circuit's] exclusive control," *Mars, Inc.*, 24 F.3d at 1371, the law of the regional circuit in which this court sits, the Eighth Circuit, states the appropriate standards for amendment.

■ The Federal Rules of Civil Procedure provide that, except in circumstances not present here, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Fed.R.Civ.P.* 15(a). The Supreme Court has stated that the granting of leave to amend is within the discretion of the district court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). Federal courts have generally and consistently recognized that the rules governing the amendments of pleadings are to be construed liberally. *Standard Title Ins. Co. v. Roberts*, 349 F.2d 613, 622 (8th Cir.1965). The leave sought should be "freely given" in the absence of any justifiable reason for denial of the motion—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

In interpreting the liberal policy underlying motions to amend pursuant to *Fed. R.Civ.P.* 15(a), the United States Court of Appeals for the Eighth Circuit has used terms nearly identical to those used by the Supreme Court in the *Foman* decision, stating that

> [u]nder this policy, only limited circumstances justify a district court's refusal to grant leave to amend pleadings; undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party.... This court will review the district court's refusal to grant leave to amend under the abuse of discretion standard. *Norbeck v. Davenport Community School District*, 545 F.2d 63, 70 (8th Cir.1976), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977).

*Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987) (citation omitted); *see also Wald v. Southwestern Bell Corp. Customcare Medical Plan*, 83 F.3d 1002 (8th Cir.1996) (stating that leave to amend should be "freely granted," but that leave may be denied if the amendment would be "futile"); *Frey v. City of Herculaneum, Mo.*, 44 F.3d 667, 672 (8th Cir.1995) (stating that leave to amend should be "granted liberally when 'justice so requires,'" quoting *Williams v. Town of Okoboji*, 606 F.2d 812, 814 (8th Cir.1979)); *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir.1994) (citing *Foman* for the applicable standards), *cert. denied*, —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *Fuller v. Secretary of Defense of U.S.*, 30 F.3d 86, 88 (8th Cir.) ("Leave to amend should be granted absent a good reason for the denial, such as undue delay, bad faith, undue prejudice to the nonmoving party, or futility," citing *Thompson–El v. Jones*, 876 F.2d 66, 67 (8th Cir.1989)), *cert. denied*, —— U.S. ——, 115 S.Ct. 583, 130 L.Ed.2d 497 (1994); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 225 (8th Cir.1994) ("Good reason to deny leave to amend exists if the amendment would be futile," citing *Foman*, 371 U.S. at 182, 83 S.Ct. at 230, and *Thompson–El*, 876 F.2d at 67); *Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.*, 958 F.2d 836, 839 (8th Cir.1992); *Standard Title*, 349 F.2d at 622.

■ With these standards in mind,[4] the court finds that EDI's amendment dis-

---

4. In any event, the court finds no difference between the standards for amendment as articu-

missing its patent infringement claim against Tyer is not the result of any "undue delay." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Fuller*, 30 F.3d at 88; *Sanders*, 823 F.2d at 216. Rather, the court finds the motion to be timely, as filed prior to the dispositive motion deadline, and timely as narrowing and clarifying the issues for trial several months before trial is scheduled to begin. Nor can the court find any prejudice to defendant Tyer in the dismissal of the patent infringement claim against him. *Id.; Fuller*, 30 F.3d at 88; *Sanders*, 823 F.2d at 216. As the court observed when it considered any prejudice to defendants Parsons and RTA, the pendency of defendant Tyer's counterclaim in this case is not affected by voluntary dismissal of the underlying patent infringement claim, because the counterclaim can remain pending for independent adjudication. Furthermore, the assertions of new evidence undercutting decisions of the Texas court on defenses to infringement may properly be brought to the attention of the Texas court by motions by Tyer for relief from the Texas judgment. Thus, no prejudice to any party is apparent, and all parties will instead benefit from the clarification and narrowing of issues for trial in this matter as the result of the dismissal of claims following disposition of the parallel Texas litigation. Therefore, EDI's motion for "summary judgment" to "dismiss" Count I against Tyer, identified in subsection I.B.2.c., and construed as a motion for leave to amend pursuant to *Fed.R.Civ.P.* 15 as to this defendant, will be granted.

Again, as a further consequence of the dismissal of Count I as to Tyer, the defendants' March 12, 1996, motion for partial summary judgment on the inequitable conduct defense and for bifurcation of trial on inequitable conduct issues, identified in subsection I.B.2.b. of this ruling, is denied as moot as to defendant Tyer. Similarly, EDI's last dispositive motion, its motion for partial summary judgment on the inequitable conduct defenses, identified in subsection I.B.2.g. of this ruling, is also denied as moot as to defendant Tyer.

Only the following few dispositive motions, or portions of dispositive motions, remain unresolved: (1) Tyer's motion to dismiss Count II, as described in subsection I.B.2.a. of this ruling; (2) that part of EDI's motion for partial summary judgment, as described in subsection I.B.2.c., seeking summary judgment on Count II against defendant Tyer; and (3) EDI's motion to dismiss Parsons's and Tyer's counterclaims, as described in subsection I.B.2.d. of this ruling.[5] The court's analysis of the remaining issues therefore begins with the viability of Count II, the "alter ego" or "piercing the corporate veil" claim against Tyer, which addresses two of the remaining motions. The court leaves for last the motion to dismiss Parsons's and Tyer's counterclaims.

### C. The "Alter Ego" Claim

Tyer has moved, in the first instance, to dismiss EDI's "alter ego" claim against him pursuant to *Fed.R.Civ.P.* 12(b)(6), but the court finds that it need consider Tyer's dispositive motion only under the standards for a motion for summary judgment pursuant to *Fed.R.Civ.P.* 56. Where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented

---

lated by the Eighth Circuit Court of Appeals and the Federal Circuit Court of Appeals. *See, e.g., Te–Moak Bands of Western Shoshone Indians of Nevada v. United States*, 948 F.2d 1258, 1260 (Fed.Cir.1991) (also citing the standards for amendment stated in *Zenith* and *Foman* ); *Intrepid v. Pollock*, 907 F.2d 1125, 1128 (Fed.Cir. 1990) (same). Nor does the court find the invocation of any different standards in the specific situation presented here, use of Rule 15 to dismiss some, but not all, claims against a defendant. *See Management Investors*, 610 F.2d at 395 n. 22 (" 'Where a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants the problem may technically be re-garded as one of amendment that is governed by Rule 15. Under Rule 15(a) plaintiff may amend his complaint once as a matter of course at any time before the answer is served. Otherwise he may amend his complaint only by leave of court or by written consent of the defendant. Where he seeks leave of court he invokes the district court's discretion and while leave is to be freely given when justice so requires, the court may deny leave, or impose conditions upon leave to amend to eliminate an issue or claims as it would upon a voluntary dismissal under Rule 41(a)(2),' " quoting 5 *Moore's Federal Practice* ¶ 41.06–1, at 41–92–93).

**5.** RTA filed no counterclaims in this action.

to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Fed.R.Civ.P.* 12(b)(6). Where matters outside of the pleadings are presented to the court, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss." *Skyberg v. United Food and Commercial Workers Int'l Union, AFL–CIO,* 5 F.3d 297, 302 n. 2 (8th Cir.1993). Where the district court has made the posture of its disposition clear, the appellate court will "treat the case as being in that posture." *Id.*[6] Because Tyer sought alternative treatment of his motion as a motion for summary judgment and submitted materials outside of the pleadings for consideration with the motion, and because EDI has filed a cross-motion for summary judgment on Count II, the court will dispose of the motion only under the standards stated in Rule 56. There can be no question that both parties are on notice that the dispositive motions as to Count II will be determined according to summary judgment standards and that they have had the opportunity to litigate the question according to summary judgment standards in the circumstances of this case. *Compare Madewell v. Downs,* 68 F.3d 1030, 1048 (8th Cir.1995) (the district court's failure to give notice of conversion of a motion to dismiss into a summary judgment motion is harmless where the nonmoving party has submitted materials outside of the pleadings in support of the motion and has had an adequate opportunity to respond to the summary judgment motion; constructive notice of the conversion is sufficient). Accordingly, the court will here consider the standards applicable to a motion for summary judgment pursuant to *Fed.R.Civ.P.* 56.[7]

### 1. Summary judgment standards

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly sixty years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir. 1992).

▪ The standard for granting summary judgment is well established. *Rule* 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

---

**6.** The Eighth Circuit Court of Appeals has also recognized that it is inappropriate for the district court to grant a party's motion to dismiss or for summary judgment without specifying the particular rule that disposes of the issue or case. *Buck v. FDIC,* 75 F.3d 1285, 1288 & n. 3 (8th Cir. 1996) (district court should specify which rule was applied, because the standards are different and appellate review is enhanced by identification of the standards applied).

**7.** Only the standards as articulated by the Eighth Circuit Court of Appeals need be considered as to this Count of the Second Amended Complaint, because it is not a patent-law claim. *See Mars, Inc.,* 24 F.3d at 1371 (issues that do not "necessarily require[] consideration of facts and resolution of legal principles that bear an essential relationship to matters committed to [the Federal Circuit's] exclusive control" are decided under the law of the regional circuit in which the district court sits).

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789 (8th Cir.1996); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[8] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, and give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir.1996); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir. 1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for [its] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). The moving party is not required by *Rule* 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. The nonmoving party is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

---

**8.** An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

■ In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247.

Because proper disposition of the present cross-motions for summary judgment may depend upon whether there is a genuine issue of material fact on the "alter ego" claim, the court must now consider the undis-puted and disputed facts relating to that claim.

### 2. Undisputed and disputed facts concerning the "alter ego" claim

■ EDI contends in this motion that RTA's infringement of the '277 and '546 patents is res judicata as the result of the Texas decision, and that Tyer is in privity with RTA, as he totally dominated RTA as its sole shareholder and sole representative at trial. Tyer concedes that he is in privity with RTA and that he is the company's sole shareholder, and further concedes that the issues of patent infringement in the Texas litigation and formerly asserted in this litigation are identical. EDI asserts that Tyer's concession that he is in privity with RTA and that the issues involved in the litigation are identical "are all that EDI must prove to recover against Tyer" on Count II. Reply Brief Of Plaintiff On Its [March 20, 1996] Motion For Partial Summary Judgment, p. 4. However, Tyer asserts that genuine issues of material fact preclude summary judgment on EDI's "alter ego" claim, because Tyer and RTA always observed all of the corporate formalities justifying limited liability of a shareholder in this case. He points to corporate records supporting his assertions of the separateness of himself and RTA, including records of corporate proceedings and financial records of his own and of his company. The court will consider below whether Tyer has thereby asserted a genuine issue of material fact as to his "alter ego" status precluding summary judgment in favor of EDI. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.[9]

---

9. Tyer also claims that Count II simply doesn't state the "alter ego" claim EDI asserts it does, but only seeks improperly to have this court make him a judgment debtor on the judgment of another court. Tyer points to paragraph 20 of the Second Amended Complaint, in which EDI states that "This action is for recovery of a prior judgment and seeks to have a judgment EDI has obtained against defendant RTA entered against defendant Tyer as well." Tyer's Reply Brief In Support Of [Alternative Motion For Summary Judgment], p. 1. Tyer also points to paragraph 28 of the Second Amended Complaint, in which EDI states "The judgment against RTA and in favor of EDI in the Texas action is recoverable against Tyer personally...." *Id.* Tyer asserts that one court does not have the power to enter a judgment of another court as to an additional defendant "as well." *Id.* at p. 2. The court finds this argument to be largely semantic misdirection. Although the statement in paragraph 20 of the Second Amended Complaint is a somewhat inartful statement of the "alter ego" claim, paragraph 28 refers to the judgment of the Texas court being "recoverable" against Tyer, which does state an "alter ego" claim. Furthermore, the relief sought on this claim is "that EDI be awarded a judgment against defendant Tyer in the amount of $118,000 plus interest thereon

### 3. Elements of an "alter ego" claim

In order to determine whether Tyer's asserted genuine issue of material fact precludes summary judgment in favor of EDI on the "alter ego" claim, or whether, as EDI contends, Tyer has conceded all the elements necessary for its recovery on the "alter ego" claim, the court must determine what a plaintiff must establish to hold a shareholder of a corporation liable for a debt of a corporation, thereby "piercing the corporate veil" of limited liability of shareholders. As the Tenth Circuit Court of Appeals recently observed,

> The corporate structure is an artificial construct of the law, a substantial purpose of which is to create an incentive for investment by limiting exposure to personal liability. "The insulation of a stockholder from the debts and obligations of his corporation is the norm, not the exception."

*NLRB v. Deena Artware, Inc.,* 361 U.S. 398, 402–03, 80 S.Ct. 441, 443–44, 4 L.Ed.2d 400 (1960) (citations omitted). *NLRB v. Greater Kansas City Roofing,* 2 F.3d 1047, 1051 (10th Cir.1993); *Thomas v. Peacock,* 39 F.3d 493, 499 (4th Cir.1994) (noting "the presumption that the corporation

and its stockholders are separate and distinct," but that the concept of a separate entity is "merely a legal theory ... and the courts decline to recognize [it] whenever recognition of the corporate form would extend the principle of incorporation beyond its legitimate purposes and [would] produce injustices or inequitable results," quoting *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 683 (4th Cir.1976) (other internal citations and quotations omitted)), *rev'd on other grounds,* —— U.S. ——, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). Consequently, the question here is, can the court determine on the summary judgment record that this case presents an exception in which personal liability may be imposed upon Tyer for the judgment debt of RTA?

In *Greater Kansas City Roofing,* the Tenth Circuit Court of Appeals considered a case in which the NLRB sought to hold the sole shareholder of a corporation liable under the doctrine of piercing the corporate veil for a judgment debt the NLRB had obtained against the corporation. *Greater Kansas City Roofing,* 2 F.3d at 1049. The Tenth

beginning as of March 17, 1995." Second Amended Complaint, prayer subsection (f). Therefore, what EDI seeks is a judgment against Tyer *in the amount of the judgment in the Texas litigation* against RTA. This is a proper statement of a claim to hold a sole shareholder liable for the judgment debt of his "alter ego" corporation. *See, e.g., UA Local 343 of United Association of Journeymen & Apprentices of Plumbing and Pipefitting Indus. of U.S. and Canada, AFL–CIO v. Nor–Cal Plumbing, Inc.,* 38 F.3d 1467, 1477 (recognizing that the "alter ego" doctrine allows creditors of corporations to pierce the corporate shell to hold shareholders liable for corporate debts if they abuse the corporate form to defraud creditors, but distinguishing the doctrine from the "alter ego" doctrine developed in labor law, which is designed to prevent employers from escaping their collective bargaining obligations by shifting work to non-union firms they also own), *as amended,* 48 F.3d 1465, 1475 (9th Cir.1994), *and cert. denied,* —— U.S. ——, 116 S.Ct. 297, 133 L.Ed.2d 203 (1995); *NLRB v. Greater Kansas City Roofing,* 2 F.3d 1047, 1051 (10th Cir.1993) (stating that an "alter ego" claim seeks to charge an individual shareholder with personal liability for the debts of the corporation, and considering such a claim where the underlying debt of the corporation was a judgment debt); *In re Haugen,* 998 F.2d 1442, 1446–47 (8th Cir.1993) (plaintiff obtained a judgment

against a corporation in state court and in bankruptcy proceedings commenced an adversary proceeding against a shareholder of the corporation personally on an "alter ego" theory to hold the shareholder liable for the corporation's debts; the court held that the "alter ego" judgment in the bankruptcy was for the pre-bankruptcy debt of the corporation, a sum certain, not a judgment purporting to make the individual shareholder a judgment debtor on the state court judgment), *cert. denied,* 510 U.S. 1093, 114 S.Ct. 925, 127 L.Ed.2d 218 (1994); *Board of Trustees of Mill Cabinet Pension Trust Fund for N. Cal. v. Valley Cabinet & Mfg. Co.,* 877 F.2d 769, 772–74 (9th Cir.1989) (considering claim to hold a shareholder liable for payments withdrawn by his "alter ego" corporation from an ERISA trust fund); *see also Fromson v. Citiplate, Inc.,* 886 F.2d 1300 (Fed.Cir.1989) (affirming the personal liability of owner-officers of a corporate defendant in patent litigation after extensive litigation against an insolvent corporation, where plaintiff sought to bring in owner-officers by Rule 15 motion *prior* to trial, but court denied the motion prior to trial upon assurances from the owner-officers that the corporate defendant was financially sound; the court allowed the amendment post-judgment when the corporation was shown to be financially troubled, contrary to the owner-officers' assurances, and the court found adequate notice that personal liability of the owner-officers might be at issue).

Circuit Court of Appeals found that the veil of corporate protection from liability of shareholders is lifted only in "extreme circumstances" and "only reluctantly and cautiously." *Id.* at 1051 (citing *Cascade Energy and Metals Corp. v. Banks,* 896 F.2d 1557, 1576 (10th Cir.), *cert. denied,* 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990)). Furthermore, "[p]iercing the corporate veil is an equitable action and as such is reserved for situations where some impropriety or injustice is evident." *Id.; Thomas,* 39 F.3d at 499–500.

### a. The nature of the "alter ego" cause of action

In *Thomas v. Peacock,* 39 F.3d 493 (4th Cir.1994), *rev'd on other grounds,* —— U.S. ——, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996),[10] the Fourth Circuit Court of Appeals considered the argument that a suit to "pierce the corporate veil" is one merely to collect an outstanding judgment of the corporation. *Thomas,* 39 F.3d at 499. The court rejected this conception of the cause of action:

> "An attempt to pierce the corporate veil is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action. . . ." 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41, at 603 (perm. ed. rev. vol. 1990). However, although an attempt to pierce the corporate veil is necessarily subsidiary to some primary cause of action, it is not simply an attempt to collect a preexisting liability against an entity already found liable under the relevant substantive law; it is, rather, an attempt to impose such a preexisting liability upon an entity *not otherwise liable. See Sandlin v. Corporate Interiors, Inc.,* 972 F.2d 1212, 1217 (10th Cir.1992) (in a "cause of action based upon the alter ego theory[,] . . . in theory the court is merely trying to indentify [sic] the true debtor on the judgment"). Thus, the doc-

trine of piercing the corporate veil is not a mere procedural rule relating to "how" a judgment is to be enforced, but is, rather, a substantive rule of liability. *See Craig v. Lake Asbestos of Quebec, Ltd.,* 843 F.2d 145, 149 (3d Cir.1988) (holding that, in diversity case, federal district court properly applied New Jersey substantive law of veil-piercing). . . .

> . . . [A]n attempt to pierce the corporate veil is a matter of substantive law that determines whether a corporate shareholder can be held liable for a preexisting judgment entered against the corporation. An attempt to pierce the corporate veil, therefore, seeks to identify those parties against whom the judgment can be satisfied.

*Thomas,* 39 F.3d at 499–500. Thus, the action here is not one merely to collect a prior judgment, or to make Tyer a "judgment debtor" on the prior judgment, but one to answer the substantive question of the liability of a shareholder for a debt of an "alter ego" corporation.

### b. "Unity" and "injustice" prongs of the "alter ego" analysis

In *Greater Kansas City Roofing,* the Tenth Circuit Court of Appeals found that it was confronted with an "alter ego" case, which it described as one in which the NLRB was seeking to pierce the corporate veil because of its conclusion that the sole shareholder of the corporation disregarded the corporation as a separate entity and operated the corporation as if it were her own personal activity. *Id.* at 1052. The Tenth Circuit Court of Appeals found that there were two parts to the test of whether a shareholder could be held liable for the debts of his or her corporation under an "alter ego" theory:

> In accordance with prior Tenth Circuit precedent and after careful consideration of the analysis of this issue offered by our

10. The Supreme Court reversed that part of the decision of the Fourth Circuit Court of Appeals in *Thomas* that held that a federal court could exercise ancillary jurisdiction over an "alter ego" claim where the prior suit establishing the judgment against the corporation had founded jurisdiction on an ERISA claim, because ERISA provided no jurisdiction over the subsequent "alter ego" claim. *Peacock v. Thomas,* —— U.S. ——, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). The Court noted, *inter alia,* that there was insufficient factual or logical interdependence of the claims between the prior and subsequent lawsuits to exercise ancillary judgment on the basis of the prior lawsuit. *Id.* at ——, 116 S.Ct. at 867.

sister courts, we conclude that the federal common law doctrine of piercing the corporate veil under an alter ego theory can best be described by the following two-part test: (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations. *See United States v. Van Diviner,* 822 F.2d 960, 964–65 (10th Cir.1987); *Seymour v. Hull & Moreland Eng'g,* 605 F.2d 1105, 1111 (9th Cir.1979); 1 [Charles R.P. Keating & Gail O'Gradney,] Fletcher Cyclopedia [of Corporations], § 41.30 at 662 [ (1990 ed.) ]; *see generally,* S. Presser, *Piercing the Corporate Veil,* § 3.16[4] at 3–160 to 3–170 (1991).

*Greater Kansas City Roofing,* 2 F.3d at 1052. The court then clarified the required proof for each prong of this test for "alter ego" liability:

> The "separate corporate identity" prong is meant to determine whether the stockholder and the corporation have maintained separate identities. There are strong public policy reasons for upholding the corporate fiction. Where stockholders follow the technical rules that govern the corporate structure, they are entitled to rely on the protections of limited liability that the corporation affords. In determining whether the personalities and assets of the corporation and the stockholders have been blurred we consider (i) the degree to which the corporate legal formalities have been maintained, and (ii) the degree to which individual and corporate assets and affairs have been commingled.
>
> Under the fraud, injustice, or evasion of obligations prong of the test we ask whether there is adequate justification to invoke the equitable power of the court. We require an element of unfairness, injustice, fraud, or other inequitable conduct as a prerequisite to piercing the corporate veil.

*Greater Kansas City Roofing,* 2 F.3d at 1052 (footnote omitted); *Thomas,* 39 F.3d at 503–05 (also considering a "control" or "separate entity" prong and a second inquiry considering "public convenience, fairness and equity").

In *Greater Kansas City Roofing,* the court identified specific factors to be considered under each prong of the test. As to "separate corporate identity," the factors considered by the Tenth Circuit Court of Appeals included the following: (1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate corporate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality, or conduit of an individual or other corporation; (7) disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and (8) diversion of the corporation's funds or assets to noncorporate uses. *Greater Kansas City Roofing,* 2 F.3d at 1052 n. 6 (citing *United States v. Van Diviner,* 822 F.2d 960, 965 (10th Cir.1987)). Similarly, in *Thomas,* the Fourth Circuit Court of Appeals considered the following factors as sufficient to establish the first prong of the "alter ego" claim: that the shareholder owned a controlling, and, at most relevant times, a complete interest in the corporation, and was for some of that time its sole director; that one of the shareholder's other companies hired a consultant to wind down the corporation's business, then billed the corporation for the consultant's services; transfers were effected among the corporation in question, the shareholder, and another of the shareholder's businesses, without proper consideration or formalities; and all of these factors properly led the court to conclude that the shareholder engaged in a "corporate strategy" with the specific intent and purpose of siphoning off the assets of the corporation to favored creditors owned or controlled by the shareholder to defeat collection of the judgment against the corporation in question. *Thomas,* 39 F.3d at 505.

Turning to the "injustice" prong, the Tenth Circuit Court of Appeals postulated that "the showing of inequity necessary to satisfy the second prong must flow from the misuse of

the corporate form." *Greater Kansas City Roofing,* 2 F.3d at 1053. The court concluded that "[i]t is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced." *Id.* (emphasis in the original); *see also Valley Cabinet & Mfg. Co.,* 877 F.2d at 773 (the fraud or injustice element is satisfied "in one of two ways: either by proof of fraud in the formation of the corporation *or* fraudulent misuse of the corporate form after incorporation," with emphasis in the original, and requiring that the fraud or injustice arise from misuse of the corporate form). Furthermore, the court held that the individual sought to be charged personally with liability for the debt or obligation of the corporation must also have shared "in the moral culpability or injustice" found to satisfy the second prong of the test. *Id.*

In *Greater Kansas City Roofing,* the Tenth Circuit Court of Appeals identified factors *insufficient* in themselves to establish the "injustice" prong of the test of liability in an "alter ego" case, which included the following: (1) commission of an unfair labor practice; (2) breach of a contract; (3) commission of a tort; (4) incapability of the corporation to pay its debts. *Id.; Valley Cabinet & Mfg. Co.,* 877 F.2d at 774 ("The 'inability to collect [from an insolvent defendant] does not, by itself, constitute an inequitable result,'" quoting *Seymour v. Hull & Moreland Eng'g,* 605 F.2d 1105, 1113 (9th Cir.1979)). The court found that the corporate form of doing business is typically selected to prevent individual liability in the first three situations. *Id.* The fourth situation, the court found, "will exist in virtually all cases in which there is an attempt to pierce the corporate veil," although the court observed that substantial undercapitalization in light of the nature and magnitude of the corporate undertaking may be sufficient indication of fraud or inequity. *Id.* at 1053 & n. 8. The court found in the case before it that there was insufficient evidence and no finding that the shareholder had committed fraud in the formation of the corporation or in the misuse of the corporate form, and no evidence that formation and use of the corpo-

ration worked an injustice, at least in part, because there was "no link" between the shareholder's sloppy manner of conducting business under the corporation and any fraud, injury, or injustice to the former employees of the corporation, which had led to the backpay award the NLRB was seeking to recover from the shareholder. *Id.* at 1055. The court therefore declined to enforce the NLRB's order to recover the judgment against the corporation from the shareholder. *Id.*

Although mere commission of a tort may be insufficient to impose "alter ego" liability, the Federal Circuit Court of Appeals has noted that "[t]he cases are legion holding corporate officers and directors personally liable for 'participating in, inducing, and approving acts of patent infringement' by a corporation," *Fromson v. Citiplate, Inc.,* 886 F.2d 1300, 1304 (Fed.Cir.1989) (citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565, 1579 (Fed.Cir.1986)). Furthermore, the United States Constitution vests Congress with the power to "promote the Progress of Science and the useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. CONST., art. I, § 8, cl. 8. To that end, Congress passed the patent laws of the United States found in Title 35 of the United States Code. The court finds it need not decide here the question of whether inability to recover against a corporation for patent infringement rises to the necessary level of "injustice" to impose "alter ego" liability. However, the court observes that these precedents suggest that the inability of a patentee to recover a judgment for the tort of patent infringement from a corporation because of the corporation's insolvency might defeat the purposes of the patent laws and therefore suffice to establish the requisite "injustice" for "alter ego" liability of the corporation's sole shareholder. *See, e.g., Alman v. Danin,* 801 F.2d 1, 4 (1st Cir.1986) (finding that permitting shareholders to hide behind corporate form of a "paper" corporation they knew was inadequately funded to avoid paying contributions required by ERISA would, in the circumstances shown, "tend to defeat ERISA's

purposes and work a clear injustice"); *Thomas*, 39 F.3d at 503 (quoting *Alman*, 801 F.2d at 3–4, as establishing the general federal standards for piercing the corporate veil, including the statement that "corporate form may not defeat overriding federal legislative policies"). Indeed, *Alman* and *Thomas* specifically rely on evasion of the purposes of a federal law as satisfying the "injustice" prong for "alter ego" liability:

> There is no litmus test in the federal courts governing when to disregard corporate form. The Supreme Court has, however, provided some guidance, stating that "the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice." *Taylor v. Standard Gas Co.*, 306 U.S. 307, 322, 59 S.Ct. 543, 550, 83 L.Ed. 669 (1939). The Court has further indicated that corporate form may not defeat overriding federal legislative policies. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 630, 103 S.Ct. 2591, 2602, 77 L.Ed.2d 46 (1983); *Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co.*, 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974). This court has said,

> > The general rule adopted in the federal cases is that "a corporate entity may be disregarded in the interests of public convenience, fairness and equity," [citing *Capital Telephone Co. v. FCC*, 498 F.2d 734, 738 (D.C.Cir.1974) ]. In applying this rule, federal courts will look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form [citation omitted], an inquiry that usually gives less respect to the corporate form than does the strict common law alter ego doctrine....

> *Town of Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir.1981).

*Alman*, 801 F.2d at 3; *Thomas*, 39 F.3d at 503–04 (quoting this portion of the *Alman* decision in its entirety). Both courts held that evasion of the purposes of ERISA was sufficient ground to disregard the corporate form. *Id.; Thomas*, 39 F.3d at 504–05. The *Fromson* decision also suggests that misrepresentations by the shareholder as to the financial condition of the corporation may also establish the injustice of not holding the shareholder liable for the judgment debt of the insolvent corporation found to have infringed a patent. *Fromson*, 886 F.2d at 1303–04 (finding no "prejudice" to such a shareholder precluding amendment to add shareholder as defendant in patent infringement case after judgment had been rendered against corporation found after judgment to be insolvent).

After surveying a number of federal decisions establishing a three-prong test of "alter ego" liability, which divided the second prong into "injustice" and "fraudulent intent," the Tenth Circuit Court of Appeals in *Greater Kansas City Roofing* concluded that fraudulent intent would satisfy the "injustice" prong as it had stated it, but that "fraud" was so broadly defined in the decisions considered that the last two factors were essentially one. *Id.* at 1054. In *Board of Trustees of Mill Cabinet Pension Trust Fund for N. Cal. v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769 (9th Cir.1989), the Ninth Circuit Court of Appeals concluded that violation of the "separate identity of the corporation" was a required element, but was insufficient alone to establish "alter ego" liability. *Valley Cabinet & Mfg. Co.*, 877 F.2d at 773. However, the court treated the latter two elements, "fraud" and "injustice," as alternatives, either of which must be shown along with violation of "separate identity of the corporation" to establish "alter ego" liability. *Id.* ("Even if the Fund prevailed on the first factor of the corporate piercing test by demonstrating that Davis commingled his personal assets with those of Valley Cabinet, it must additionally prove fraudulent intent *or* injustice," with emphasis added). Thus, the court concludes that there are two required elements of "alter ego" liability, rather than three.

#### c. "Federal common law" or "state law"?

Although the Tenth Circuit Court of Appeals discussed the elements of an "alter ego" claim in terms of "federal common law," *Greater Kansas City Roofing*, 2 F.3d at

1052; *see also Thomas,* 39 F.3d at 503 (applying federal common law standards to "alter ego" claim); *Alman,* 801 F.2d at 3–4 (finding "no litmus test in the federal courts governing when to disregard corporate form" in an "alter ego" case, but attempting to establish factors considered under federal law); *United States v. Sutton,* 795 F.2d 1040 (Temp.Emer.Ct.App.1986) (stating that "[w]ithout reference to state law, this Court has held that the corporate veil may be pierced to hold a controlling shareholder liable for corporation violations of DOE regulations," and finding that the "general rule" is that a corporate entity may be disregarded if it was used to defeat public convenience, justify a wrong, perpetrate a fraud, or defend a crime), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987),[11] many federal decisions identify essentially the same elements, and factors to be considered under each element, when applying state law to an "alter ego" claim. *See, e.g., Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1457–60 (2d Cir. 1995) (applying Delaware law, and finding the two elements of "alter ego" liability for corporate debts are operation as a single economic entity and an "overall element of injustice or unfairness," but holding that "under Delaware law, the alter ego theory of liability does not require any showing of fraud"; the court affirmed summary judgment against the plaintiff, because not only was the showing of economic unity insufficient, but no evidence at all was offered on the "injustice or unfairness" element); *Hystro Prods., Inc. v. MNP Corp.,* 18 F.3d 1384, 1389–92 (7th Cir.1994) (piercing the corporate veil on an "alter ego" theory under Illinois law requires a showing of two elements: "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that adherence to the fiction of separate corpo-

rate existence would sanction a fraud *or* promote injustice," with emphasis added, and citing factors similar to those considered in *Greater Kansas City Roofing* for determination of the first element, and also observing that the second factor requires something more than an unsatisfied judgment, such as unjust enrichment, escape of responsibility for misconduct caused by the person sought to be held liable, or separation of assets and liability by virtue of manipulation of corporate structures); *Sea–Land Servs., Inc. v. Pepper Source,* 941 F.2d 519 (also applying Illinois law and considering the same factors and elements, and relying primarily on *Van Dorn Co. v. Future Chem. and Oil Corp.,* 753 F.2d 565 (7th Cir.1985), discussed *infra*); *Firstmark Capital Corp. v. Hempel Fin. Corp.,* 859 F.2d 92, 94 (9th Cir.1988) (applying California law, and finding that the first element of an "alter ego" claim is "unity of interest and ownership" such that there is a cessation of separateness of corporation and individual, and the second element is that "adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud *or* promote injustice," with emphasis added here); *Wolfe v. United States,* 798 F.2d 1241, 1243–44 (in case in which IRS sought to hold a shareholder liable for the taxes of his corporation, the court applied Montana "alter ego" law, and held that the corporate entity may be pierced without a positive showing of fraud, but may be pierced where the corporation is used to evade a public duty, such as paying taxes), *as amended,* 806 F.2d 1410, 1411 (9th Cir.1986) (the amendment adds that "[t]he determination of whether to apply state or federal alter ego doctrine depends on the degree to which the subject matter of the case implicates federal interests," citing, *inter alia, United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979)), *and cert.*

**11.** In *Dow Chem. Pac., Ltd. v. Rascator Maritime, S.A.,* 782 F.2d 329 (2d Cir.1986), the court observed that the test for piercing the corporate veil *in a maritime context* required that the "individual must have used the corporate entity to 'perpetrate a fraud *or* have so dominated and disregarded' the corporate entity's form that the entity 'primarily transacted [the individual's] personal business rather than its own corporate busi-

ness.'" *Dow Chem. Pac., Ltd.,* 782 F.2d at 342 (quoting *Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir.1980), with emphasis added here). This version of the doctrine for maritime law, yet another body of common law, seems to suggest that *either* fraud *or* violation of the corporate entity's separateness is sufficient to establish "alter ego" liability, but that both are not required.

*denied,* 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987); *Melikian v. Corradetti,* 791 F.2d 274, 281–83 (3d Cir.1986) (considering same elements and factors under New Jersey law); *Van Dorn Co. v. Future Chem. and Oil Corp.,* 753 F.2d 565, 569–70 (7th Cir.1985) (applying Illinois law, and stating elements of "alter ego" liability as "such unity of interest and ownership that the separate personalities of the corporation and the [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."); *United States v. Standard Beauty Supply Stores, Inc.,* 561 F.2d 774, 777 (9th Cir.1977) (under California law, to establish "alter ego" claim, two particular findings must be made: that there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exists, and that the failure to disregard the corporation would result in fraud or injustice; in the case of an unsatisfied creditor attempting to collect a judgment debt against a corporation from a shareholder, the unsatisfied debt is not enough to establish the requisite bad faith or inequitable conduct; furthermore, the corporate formalities were followed and there was no commingling of assets, both of which are normally present in "alter ego" cases); *Dudley v. Smith,* 504 F.2d 979, 982–83 (5th Cir.

1975) (considering "alter ego" liability under Alabama law of a de facto sole shareholder after the plaintiff was unable to recover a judgment against a corporation because of its insolvency, and examining identity of the corporation and individual in terms of control of the corporation, shuttling of funds between the two without promissory notes, and failure to adhere to corporate formalities).

Tyer asserts that Texas law, the law under which RTA was incorporated, applies to EDI's "alter ego" claim and that Texas law specifically requires a showing of disregard of corporate formalities in order to pierce the corporate veil, citing *Nelson v. Schanzer,* 788 S.W.2d 81, 85–86 (Tex.Ct.App.1990).[12] *See also State v. De Santio,* 899 S.W.2d 787, 790 (Tex.Ct.App.1995) ("Alter ego, however, is 'shown from the total dealings of the corporation and the individual' including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.... The existence of one of the foregoing factors alone is not a sufficient basis for disregarding the corporate fiction."); *Valley Mechanical Contractors, Inc. v. Gonzales,* 894 S.W.2d 832, 834–35 (Tex.Ct.App.1995) (same factors). Tyer con-

12. Under a decision of the Fifth Circuit Court of Appeals applying Texas law, it appeared that Tyer's assertion that Texas law is applicable is a two-edged sword. In *Pan Eastern Exploration Co. v. Hufo Oils,* 855 F.2d 1106 (5th Cir.1988), the Fifth Circuit Court of Appeals found that the "alter ego" theory for piercing the corporate veil is analytically distinct from other piercing the corporate veil theories, such as use of the corporation for "illegal purposes" and use of the corporation as a "sham to perpetrate fraud." *Pan Eastern Exploration Co.,* 855 F.2d at 1132–34; *see also Fidelity & Deposit Co. of Maryland v. Commercial Cas. Consultants, Inc.,* 976 F.2d 272, 274 (5th Cir.1992) (also identifying three analytically separate theories under which the corporate veil may be pierced as "(1) [when] the corporation is the alter ego of its owners or shareholders, (2) the corporation is used for an illegal purpose, and (3) the corporation is used as a sham to perpetrate a fraud"). The peril for Tyer in assertion of Texas law as controlling, if *Pan Eastern Exploration Co.* accurately stated Texas law, is that in that case, the Fifth Circuit Court of Appeals also concluded that, although

"alter ego usually will be accompanied by assertions of unfairness to the claimant ... there is nothing in the alter ego strand to suggest that anything more is required than the failure of the owners to maintain the corporation as a distinct legal entity." *Pan Eastern Exploration Co.,* 855 F.2d at 1132. However, decisions of Texas courts since 1988 have repeatedly stated that "injustice" is an element of an "alter ego" theory for piercing the corporate veil. *See, e.g., State v. De Santio,* 899 S.W.2d 787, 790 (Tex.Ct.App. 1995) (in a case concerning use of the "alter ego" theory to make assets and liabilities of the corporation those of individuals, the court observed, "Generally, alter ego is a basis in law used by opponents of the corporation to disregard the corporate fiction when there is such unity between a corporation and an individual that the separateness of the corporation has ceased *and* holding the corporation liable would result in an injustice," *with emphasis added* here); *Valley Mechanical Contractors, Inc. v. Gonzales,* 894 S.W.2d 832, 834 (Tex.Ct.App.1995) (also requiring both "unity" and "injustice").

tends that there is at least a genuine issue of material fact as to whether or not these corporate formalities were adhered to in the relationship between Tyer and RTA, and further asserts that in the "totality of the circumstances," his control of RTA is insufficient to establish, on summary judgment, the first element of "alter ego" liability.

### d. Is there a genuine issue of material fact on the "alter ego" claim?

■ Without deciding whether Texas law or "federal common law" applies, and without addressing any element but "identity" of the corporation and the individual, the court finds that there is indeed a genuine issue of material fact as to RTA's and Tyer's adherence to corporate formalities and whether or not finances were commingled precluding summary judgment in this case on Count II of EDI's Second Amended Complaint. A concession of "privity" is far from leaving undisputed the factual extent to which Tyer and RTA maintained the *formal* existence of the corporation as required by law or had a "unity of interest" in the totality of the circumstances, such that "alter ego" liability may be imposed under either Texas law, *see, e.g., Pan Eastern Exploration Co.,* 855 F.2d at 1132, or federal common law. *Greater Kansas City Roofing,* 2 F.3d at 1052–53.

EDI's motion for summary judgment on its "alter ego" claim is therefore denied.[13]

### 4. Relitigation and res judicata

### a. Relitigation of RTA's liability

■ Tyer at times appears to suggest that EDI's "alter ego" claim should allow him to relitigate the patent infringement issues leading to the judgment against RTA. However, the Eighth Circuit Court of Appeals has found such an argument meritless where the underlying judgment establishing the debt of the corporation sought to be imposed upon the shareholder has not been appealed and, even if it had been appealed, the shareholder controlled the litigation by the corporation. *See In re Haugen,* 998 F.2d 1442, 1447 n. 3 (8th Cir.1993); *see also Alman,* 801 F.2d at 4 (in an "alter ego" case, finding the principle that a person is not bound by a judgment as to which he did not have a full and fair opportunity to litigate the underlying claim does not apply in the case of nonparties who assumed control over litigation in which they have a direct financial or proprietary interest). The record in this case suggests, first, that although the judgment against RTA was appealed to the Federal Circuit, the appeal was then dismissed and there is no indication that it has been reinsti-

13. Because summary judgment cannot be entered under either Texas "alter ego" law or "federal common law," and because the parties have not adequately briefed the issue of what law applies to the claim, the court does not here decide whether EDI's "alter ego" claim is governed by Texas law or "federal common law." However, on this question, the court finds instructive the analysis of this question by the Fourth Circuit Court of Appeals in *Thomas,* 39 F.3d at 501–05. In *Thomas,* the court concluded that a veil-piercing, and specifically, an "alter ego" claim against a shareholder to satisfy a judgment against the shareholder's corporation is not "independent" of the initial litigation, but is instead necessarily subsidiary to the primary cause of action, even if brought in a subsequent action. *Id.* at 501. Because the prior action, in which the judgment was obtained against the corporation, had been an ERISA action, and therefore governed by federal law, the court concluded that a subsequent action to pierce the corporate veil in an ERISA action is made under federal common law. *Thomas,* 39 F.3d at 503; *see also Wolfe,* 806 F.2d at 1411 ("The determination of whether to apply state or federal alter ego doctrine depends on the degree to which the subject matter of the case implicates federal in-

terests," and citing cases establishing tests for when federal law should apply). The Supreme Court reversed only that portion of the appellate court's ruling in *Thomas* that held that the federal courts have ancillary jurisdiction over the "alter ego" on the basis of the prior ERISA lawsuit. *Peacock,* —— U.S. at ——, 116 S.Ct. at 867. The Supreme Court did not address the question of whether state law or federal common law should apply to the "alter ego" claim. The implication of that part of *Thomas* the Supreme Court left intact is that this action should also be governed by "federal common law" standards of "alter ego" liability, rather than the Texas standards Tyer asserts in passing. Nonetheless, the court does not need to decide that question here, because summary judgment on this claim is precluded under either Texas or federal common law. However, if EDI's "alter ego" claim survives the challenges brought here, prior to trial on the merits, the parties will be required to address the question of what law applies to this claim in this diversity action seeking to satisfy a judgment for patent infringement against a corporation in a second action against the corporation's sole shareholder, at least to the extent that choice of law might be outcome determinative at trial on the merits.

tuted. However, even if the appeal of the Texas judgment to the Federal Circuit has been reinstituted, Tyer cannot assert as a defense to the "alter ego" claim here any challenge to the patent infringement judgment against RTA, because the undisputed record plainly establishes that Tyer controlled RTA's litigation in Texas. *In re Haugen,* 998 F.2d at 1447 n. 3. Therefore, EDI is correct that Tyer has conceded everything that would bar him from *challenging the underlying patent infringement judgment against RTA,* but EDI is *not* correct in asserting that Tyer has conceded all of the elements of the "alter ego" claim.[14]

### b. Res judicata

Tyer's principal challenge to the "alter ego" claim, asserted in his own alternative

motion for summary judgment on Count II, is that the claim is res judicata. Tyer asserts that the Texas court refused to add him as a defendant in that action, thereby foreclosing EDI's attempts to assert the "alter ego" claim here. The court must therefore discover the applicable res judicata analysis, then decide whether res judicata bars EDI's "alter ego" claim. However, the court must first review what was litigated before the Texas court and what that court decided, as well as the arguments of the parties concerning this res judicata issue.

After it had obtained a judgment against RTA in the Texas lawsuit and RTA had declared bankruptcy, EDI sought leave of the Texas court pursuant to *Fed.R.Civ.P.* 15 to amend its complaint there to add Tyer as

---

14. EDI asserts that *Drier v. Tarpon Oil Co.,* 522 F.2d 199 (5th Cir.1975), stands for the proposition that once privity is established, alter ego liability follows. However, *Drier* actually involved the question of whether privity barred the president of a corporation from relitigating the liability of the corporation under securities laws, a question decided in a prior suit in state court, because of the president's ownership of 78% of the stock in the corporation and his appearance as the sole representative of the corporation in the trial of the claim against the corporation. *Drier,* 522 F.2d at 199–200. The court concluded that the president could not relitigate the corporation's liability in the second suit, which sought to hold him liable for securities violations. *Id.* at 200. However, the "alter ego" liability of the president for the judgment against the corporation was not established on the basis of a finding of "privity"; instead, the president was found liable as a "control person" of the corporation under the 1933 Securities and Exchange Act, 15 U.S.C. § 77o, a question not decided in the state court action, and not resulting in enforcement of the judgment in the state case against the president, but in the entry of a judgment on a securities law claim. *Id.* Therefore, *Drier* only stands for the much more narrow proposition acknowledged by the court here: privity prevents relitigation by the person in privity of the corporation's liability.

Although another case cited by EDI for the proposition that privity suffices to establish "alter ego" liability, *Dudley v. Smith,* 504 F.2d 979 (5th Cir.1975), appears to provide more support for that proposition, a careful reading of the case, in this court's view, also shows that it does not support the proposition for which it is proffered. In *Dudley,* the court, applying Alabama law, discussed "alter ego" liability as being established from various factors, including the following: evidence indicating that the shareholder

owned and controlled "in toto" the corporation against which a judgment had been obtained but could not be collected owing to insolvency of the corporation; he "shuttled" funds between personal and corporate accounts without accepting promissory notes; other directors took no active part in the corporation's operations; and corporate formalities were seldom adhered to. *Dudley,* 504 F.2d at 981. It was these factors that established the "alter ego" liability of the individual for the judgment debt of the corporation, although the court never discussed any "injustice" factor as a necessary element under Alabama law. *Id.* The court then turned to the separate question of whether, despite the jury's "alter ego" finding, the defendant shareholder could relitigate the liability of the corporation for the judgment debt, and found that the issue of the corporation's liability was res judicata, because of privity between the shareholder and the corporation. *Id.* In fact, what the court found was that if the individual and corporation were "alter egos," they were in "privity" for res judicata purposes. *Id.* (stating that "[a] stockholder may be in privity with his corporation, however, such that a judgment against the latter is res judicata as to the former, if the two are found to be alter egos," and quoting *Shamrock Oil and Gas Co. v. Ethridge,* 159 F.Supp. 693, 697 (D.Colo.1958), as holding "the effect of applying the alter ego doctrine ... is that the corporation and the person who dominates it are treated as one person, so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound...."). Thus, despite a concession of "privity," the parties must still litigate Tyer's liability for the judgment debt of RTA on the "alter ego" theory. What Tyer cannot *re*litigate, owing to his concession of privity, is whether RTA is liable for the judgment debt or the amount of that debt.

1242

a defendant. In its motion to amend, EDI requested that the amendment relate back to the filing of the original complaint. EDI sought to add Tyer as a defendant without any reference by anyone, including the court, to "alter ego" or "piercing the corporate veil." Instead, EDI asserted that its amendment to add Tyer as a defendant after judgment was appropriate, because the patent infringement cause of action asserted against Tyer in the amendment arose out of the same conduct, transaction, or occurrence alleged in the original pleading naming only RTA as a defendant. EDI argued to the Texas court that Tyer was intimately and personally involved in the infringing activity at issue and that he had received sufficient notice of the lawsuit so that his defense would not be prejudiced owing to his "identity of interest" with RTA, his involvement in all aspects of the litigation between EDI and RTA, and his being named personally as a defendant in the companion Iowa litigation. Thus, EDI argued to the Texas court that it was appropriate to hold Tyer personally liable as the sole officer and shareholder of RTA. Next, EDI asserted that Tyer knew or should have known that, but for a mistake concerning identity, the Texas action would also have been brought against him personally, because Tyer allegedly misled EDI and others as to RTA's purportedly sound financial condition, leading EDI to believe it need not sue Tyer personally to recover on any judgment. Finally, EDI argued that the "notice" and "mistake" requirements necessary for its amendment to relate back to the original filing of the complaint were fulfilled within the time period specified in *Fed. R.Civ.P.* 15(c). The entire text of the Texas court's order denying the motion for leave to amend states, "EDI's motion to amend its counterclaim (# 149) is denied." Order of August 2, 1995, of U.S. District Court for the Southern District of Texas (hereinafter, "Texas Order of August 2, 1995").

Tyer asserts that the Texas court decided and rejected an "alter ego" theory of liability, and therefore the claim is barred by res judicata and federal comity here, because the Texas court denied EDI's post-judgment motion to amend its complaint to add Tyer as a defendant. EDI asserts that neither res ju-

dicata nor federal comity is applicable, because the Texas court denied a Rule 15 motion to amend to add Tyer as a defendant in the Texas action after judgment had been entered against RTA. Thus, EDI asserts, neither its claim in Count II nor the issues involved in its disposition were considered or decided by the Texas court.

■ *i.   Claim preclusion.* The Federal Circuit Court of Appeals recently concluded that whether claim preclusion may be invoked by a corporate parent following a final judgment against its wholly owned subsidiary involved "a pure question of the law of judgments," because "[t]he setting in which the question arises is a patent case, but the issue is not one peculiar to patent law." *Mars, Inc. v. Nippon Conlux Kabushiki–Kaisha,* 58 F.3d 616, 618 (Fed.Cir.1995). The court therefore concluded that the claim preclusion issue was governed by the law of the regional circuit in which the district court was sitting, not by the law of the Federal Circuit Court of Appeals. *Id.* Because the claim preclusion issue here is similar to that presented in *Mars, Inc., i.e.,* a "pure" question of the law of judgments, even if the setting in which the question arises is a patent case, this court concludes that the applicable res judicata standards are those of the Eighth Circuit Court of Appeals.

■ The term "res judicata" includes both issue and claim preclusion. *Plough v. West Des Moines Community Sch. Dist.,* 70 F.3d 512, 515 (8th Cir.1995). In order to assert res judicata as a defense to a claim, a person must have been a party to the prior action, or a "privy" of a party in the prior action. *United States v. Gurley,* 43 F.3d 1188, 1197 (8th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995). EDI and Tyer agree that Tyer is a privy of RTA, a party to the Texas litigation. Therefore, Tyer is a proper party to assert res judicata of the Texas litigation as a defense to EDI's "alter ego" claim in this litigation.

■ In *Plough,* the Eighth Circuit Court of Appeals clarified that "claim preclusion," to which the term "res judicata" more properly applies, " 'bars relitigation of the same

*claim* between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction.'" *Plough,* 70 F.3d at 517 (quoting *Smith v. Updegraff,* 744 F.2d 1354, 1362 (8th Cir. 1984), with emphasis added here); *see also United States v. Gurley,* 43 F.3d 1188, 1195 (8th Cir.1994) (stating the same standard as *Plough,* but citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)); *Waller v. Groose,* 38 F.3d 1007, 1008 (8th Cir.1994) (four requirements of res judicata are "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies," quoting *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983)). The party against whom res judicata is to be used, however, must have had "a full and fair opportunity to investigate and litigate the matter concluded," *id.,* or have been in privity with a party that had such an opportunity. *County of Boyd v. U.S. Ecology, Inc.,* 48 F.3d 359, 361 (8th Cir.1995) (noting "the general common law rule is that claim preclusion only works against those who had a fair chance to contest the earlier suit," but that this rule had been liberalized "and the focus of the claim preclusion inquiry has in some instances shifted from whether a party itself participated in the prior litigation to whether the party's interests were fully represented in the earlier case, albeit by another," thus avoiding successive litigation by different parties with the same interest), *cert. denied,* —— U.S. ——, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995); *see also Hicks v. O'Meara,* 31 F.3d 744, 746 (8th Cir.1994) (applying South Dakota res judicata law, the court found that "even when there is an identity of claims res judicata will not preclude the second suit if a claim could not have been fully and fairly adjudicated in the prior case"). There is no question that the party against whom Tyer is asserting res judicata on the "alter ego" claim, EDI, was the same party litigating in Texas. However, in the Texas litigation, EDI never brought or litigated an "alter ego" claim so-called against Tyer, because the only claims EDI brought in that litigation against RTA, and attempted to bring against Tyer by way of its motion to amend, were patent infringement claims. Thus, as in *Gurley,* whether res judicata bars the present "alter ego" claim depends, at least in the first instance, on whether the present cause of action presents the same cause of action as EDI attempted to assert against Tyer in the Texas litigation. *Gurley,* 43 F.3d at 1195 (question was whether the EPA's present CERCLA claim against the defendant presented the same cause of action asserted by the EPA under the Clean Water Act in prior litigation against the same defendant).

In *Gurley,* the court stated that the test of "[w]hether the present cause of action is the 'same cause of action' as the prior action depends on whether it 'arises out of the same nucleus of operative facts as the prior claim.'" *Gurley,* 43 F.3d at 1195 (quoting *Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir.), *cert. denied,* 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990)), and also citing *Reyher v. Champion Int'l Corp.,* 975 F.2d 483, 487 (8th Cir.1992)). "The legal theories of the two claims are relatively insignificant because 'a litigant cannot attempt to relitigate the same claim under a different legal theory of recovery.'" *Id.* (quoting *Poe v. John Deere Co.,* 695 F.2d 1103, 1105 (8th Cir.1982)). Therefore,

> [t]o determine whether the present claim and the prior claim constitute the same claim, we consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations...." *Lane,* 899 F.2d at 742 (quoting *Restatement (Second) of Judgments* § 24(2) (1980)).

*Gurley,* 43 F.3d at 1196. Although the issues of patent infringement considered in the Texas suit and the "alter ego" claim asserted here involve facts that are temporally related, and might have formed a convenient trial unit, the court concludes that the determinative factual issues are essentially discrete. *Proof of patent infringement by RTA re-* quired no showing whatsoever of the two factual elements of the "alter ego" claim as stated above, "unity" of Tyer and RTA, and

"injustice" of honoring the corporate fiction. Rather, the essential factual issues of "alter ego" liability, though of contemporary provenance and involving the same actors as the patent infringement liability issues, do not amount to a repackaging of the same facts into a different legal theory for recovery. *Gurley,* 43 F.3d at 1195. The manner in which the debt of a corporation is established, as we have seen in the subsection immediately preceding, may not be relitigated in an "alter ego" cause of action against a shareholder sought to be held liable for the debt of the corporation. To put it another way, whether the shareholder can be held liable under the "alter ego" theory in the "subsidiary" lawsuit involves factual inquiries entirely separate from the factual issue of the debt of the corporation established in the "primary" lawsuit.[15] The first lawsuit considered the facts establishing patent infringement, while the present lawsuit focuses on the factual relationship between the shareholder and his corporation, in the first instance, and then upon whether honoring the corporate fiction leads to an injustice to the plaintiff, in the second instance. In short, the "alter ego" liability of the shareholder is a different substantive question from the liability of the corporation for patent infringement, *Thomas,* 39 F.3d at 499–500, and furthermore arises from a different nucleus of operative facts. *Gurley,* 43 F.3d at 1195; *see also McNeill v. Franke,* 84 F.3d 1010, 1013 (8th Cir.1996) (applying Missouri res judicata law, and holding that although refinancing transactions were common facts in two lawsuits, one for contempt to enforce a divorce decree and the second to enforce a note and deed of trust against later lienholders and title holders, they did not "arise out of the same act, contract or transaction" or require the same parties, subject matter, and evidence to sustain the claim).

The Eighth Circuit Court of Appeals has cautioned that in deciding whether two claims are "the same cause of action," the focus is not the plaintiff's conduct in relation to the underlying facts. *Gurley,* 43 F.3d at 1196. " 'In the final analysis the test would seem to be whether *the wrong for which*

*redress is sought* is the same in both actions.' " *Id.* (with emphasis added by that court, quoting *Roach v. Teamsters Local Union No. 688,* 595 F.2d 446, 449 (8th Cir.1979), in turn quoting *Woodbury v. Porter,* 158 F.2d 194, 195 (8th Cir.1946)); *see also Hicks,* 31 F.3d at 746 (applying South Dakota law, and finding res judicata requires the same cause of action, and "whether causes of action are identical depends on whether the wrong sought to be redressed is the same in both actions"). Here, the wrong redressed in Texas was infringement of the patents; the wrong for which redress is sought here is use of the corporate form to perpetrate an injustice. The court concludes that EDI is not asserting the "same cause of action" against Tyer in this lawsuit as it previously asserted in the Texas litigation against Tyer's privy, RTA, and therefore Tyer's assertion of "claim preclusion" fails.

Yet, even assuming the patent infringement cause of action asserted against RTA and the "alter ego" cause of action asserted against RTA's privy, Tyer, are the "same cause of action," it is not the disposition of EDI's *claim* or *cause of action* in the Texas lawsuit that Tyer asserts precludes EDI's "alter ego" claim here, but only the fact that the Texas court did not permit *any* claim or cause of action to be asserted against Tyer in the Texas litigation when it denied EDI's motion to amend that Tyer asserts precludes EDI's "alter ego" claim against him. Tyer's assertion of res judicata on the basis of disposition of a motion to amend is unpersuasive. The Texas court never reached the merits of any cause of action against Tyer, because the court ruled on the *procedural,* not *substantive* issue of whether to allow belated amendment of the complaint to add a cause of action against Tyer after judgment had already been rendered against RTA. Thus, there is no "final judgment on the merits" that can be raised as a bar to assertion of the claim in the present litigation. *See Plough,* 70 F.3d at 517 ("claim preclusion" applies " 'where a final judgment has been rendered upon the merits by a court of competent jurisdiction,' " *Updegraff,* 744 F.2d

**15.** *See Thomas,* 39 F.3d at 501–05 (describing the lawsuit against the corporation as the "primary" lawsuit and the lawsuit against the shareholder to establish "alter ego" liability as "subsidiary").

at 1362); *Gurley,* 43 F.3d at 1195 ("claim preclusion" requires a final judgment on the merits on the claim in the prior litigation). Nor was there a "full and fair" adjudication of the cause of action against Tyer, *Plough,* 70 F.3d at 517; *see also Hicks,* 31 F.3d at 746 (applying South Dakota law and requiring a "full and fair" adjudication for res judicata), even if there was a "full and fair adjudication" of the merits of the motion for leave to amend. Furthermore, the procedural issue decided by the Texas court was consigned to that court's discretion. Such a decision cannot support claim preclusion. *See Waller v. Groose,* 38 F.3d 1007, 1008 (8th Cir.1994) (dismissal of inmate's lawsuit under 28 U.S.C. § 1915(a) "is not a dismissal on the merits, but rather an exercise of the *court's* discretion under the *in forma pauperis* statute," thus the dismissal had no res judicata effect on the claim, although it did have a res judicata effect on frivolousness determinations for future *in forma pauperis* petitions on the same claim); *Gwartz v. Jefferson Mem. Hosp. Ass'n,* 23 F.3d 1426, 1430 (8th Cir.1994) (assuming that either claim preclusion or issue preclusion would apply to a decision on joinder of parties under Rule 19 if the same joinder issue was raised in both lawsuits, but finding the joinder issues in the two suits were different).[16]

Although "claim preclusion" focuses on whether *claims* asserted in a second lawsuit are precluded by the assertion of "the same causes of action" in a prior lawsuit, "claim preclusion" also has a preclusive effect on specific *issues* decided in the prior lawsuit. Thus, "claim preclusion" also provides that " 'a final judgment on the merits of an *action* precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *Id.* (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980), with emphasis added here). To put it *another* way, claim preclusion applies " 'not only as to every matter which was offered and received to sustain or defeat *the claim or demand,* but as to any other admissible matter which might have been offered *for that purpose.' "* *Gurley,* 43 F.3d at 1195 (quoting *Sea–Land Servs., Inc. v. Gaudet,* 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974), in turn quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948), quoting in its turn *Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876), with emphasis added here). However, the lack of any final judgment by the Texas court on any cause of action against Tyer means that Tyer cannot assert claim preclusion to bar EDI's proffer of any issue or matter that was or could have been raised in support of its present claim against Tyer.

*ii. Issue preclusion.* The court therefore turns from claim preclusion to the related doctrine of "issue preclusion," or "collateral estoppel," which provides that " 'once a court has decided an issue of fact or law necessary to *its* judgment, that decision may preclude relitigation of the issue in a suit on a *different* cause of action involving a party to the first case.' " *Id.* (quoting *Allen,* 449 U.S. at 94, 101 S.Ct. at 414, with emphasis added here). Thus, the court must consider whether any decision of the Texas court as to the proffer of a patent infringement claim against Tyer in an amended complaint precludes EDI's assertion of any issue in its different "alter ego" cause of action here.

In *Gurley,* the Eighth Circuit Court of Appeals explained more fully the requirements of "collateral estoppel" or "issue preclusion":

> Under the doctrine of collateral estoppel, which also is known as issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana,* 440 U.S. at 153, 99 S.Ct. at 973. The appellants were entitled to rely on collateral estoppel in this case if
>
> "(1) the issue was identical to one in a prior adjudication; (2) there was a final

---

16. Thus, the Texas decision may be res judicata as to EDI's ability to add Tyer as a defendant on the patent infringement claims in the Texas litigation. However, Tyer was already a defendant on the patent infringement claims in this litigation until those claims were dismissed in this ruling. Thus, the identical amendment *issue* could never arise in this case.

judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue."

*Arkla Exploration Co. v. Texas Oil & Gas Corp.,* 734 F.2d 347, 356 (8th Cir.1984) (quoting *Oldham v. Pritchett,* 599 F.2d 274, 279 (8th Cir.1979)), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985).

*Gurley,* 43 F.3d at 1198; *see also Plough,* 70 F.3d at 516 (citing identical factors in "issue preclusion" analysis under Iowa law). Tyer cannot demonstrate that any of these factors, with the exception of presence or privity of the estopped party, EDI, have been met here.

First, the issues involved in determining whether Tyer can be held liable for patent infringement in the Texas litigation are not "identical" to the issues asserted in the Iowa litigation. *Gurley,* 43 F.3d at 1198 (issues must be "identical"). The court observed above that the factual issues of liability involved in a patent infringement claim and an "alter ego" claim are discrete. As to the second factor, whether any "final judgment on the merits" was rendered in the prior litigation, *Gurley,* 43 F.3d at 1198 (issue preclusion requires "final judgment" on the issue), the court finds that no such "final judgment" on the patent infringement issue or any relevant issues underlying that cause of action as to Tyer was made in the Texas litigation. As the standards for leave to amend, discussed above, demonstrate, a ruling on a motion for leave to amend is not final in nature and does not decide the merits of the claim. Similarly, the record does not reveal that EDI had a full and fair opportunity to be heard on the merits of any issue asserted in the amended complaint proffered in Texas, *Gurley,* 43 F.3d at 1198 (issue preclusion requires full and fair opportunity to be heard on the issue), because the motion for leave to amend was denied before the merits of any issue involved in the patent infringement claim were ever reached.

Yet, certain specific, identical factual issues were or may have been raised by EDI concerning Tyer's relationship to RTA, not in support of the patent infringement claim, but in support of the motion for leave to amend. In the Texas litigation, EDI urged that its motion for leave to amend to add Tyer must be decided upon consideration of factors identified by the Federal Circuit Court of Appeals in *Fromson,* 886 F.2d at 1300, as relevant under *Fed.R.Civ.P.* 15(c) to whether amendment should "relate back" to the time of filing of the original complaint. Those factors were whether the proffered amendment arose out of the same conduct, transaction, or occurrence alleged in the original pleading; whether the party sought to be brought in received sufficient notice that its defense was not prejudiced; whether the party knew or should have known that, but for a mistake concerning identity, the action would have been against it; and whether the second and third requirements, "notice" and "mistake," were fulfilled within the time period specified by Rule 15(c). *See* Memorandum In Support Of EDI's Motion To Amend Its Counterclaims To Add Robert Tyer As A Counterclaim Defendant [In The Texas Litigation], p. 3 (citing *Fromson,* 886 F.2d at 1300). As to the "notice" issue, EDI did argue in the Texas litigation the interrelationship of RTA and Tyer in essentially the same manner it now asserts factual issues in support of its showing on the "unity" element of its "alter ego" claim. EDI also asserted facts similar to those presented here suggesting that it would be unjust not to allow the amendment, which correlate to a showing of the "injustice" element of the present "alter ego" claim.

Assuming, for the sake of argument, that EDI was given a "full and fair" hearing on these factual issues, and that denial of the motion to amend was a "final judgment," the Texas court, because it was considering a motion for leave to amend, did not "actually and necessarily" have to decide any of these factual issues to render a ruling on the motion for leave to amend. *Gurley,* 43 F.3d at 1198 (court in first lawsuit must "actually and necessarily" have decided the issue sought to be precluded in the second lawsuit). The Texas court's somewhat laconic, one-sentence disposition of the motion for leave to amend

yields no basis for determining what factual issues asserted by EDI were or were not decided by the court. Nor does the Texas court's ruling indicate on which of the grounds for denial of leave to amend cited by the Supreme Court in *Foman,* 371 U.S. at 182, 83 S.Ct. at 230, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant, or futility of the amendment, motivated the denial of EDI's motion for leave to amend. In these circumstances, no *issue* can be precluded any more than any *claim* can be precluded on the basis of the Texas litigation in this court's consideration of the "alter ego" claim.

Because the court finds neither claim preclusion nor issue preclusion bars EDI's assertion of its "alter ego" claim against Tyer or bars consideration of any issue involved in that claim, Tyer's motion for summary judgment on Count II must also be denied.

### D. Counterclaims

The final issue this court must decide here is whether or not to dismiss Parsons's and Tyer's counterclaims as EDI has requested in its March 25, 1996, motion. EDI first attacks all counterclaims for lack of allegations of subject matter in violation of *Fed. R.Civ.P.* 8(a)(1). However, the lack of specific allegations of subject matter is a matter that could easily be cured by amendment if the counterclaims are otherwise viable, so the court passes on to other, more substantial challenges.

▇▇▇ EDI also challenges Tyer's and Parsons's counterclaims seeking declarations of non-infringement as lacking the "reasonable apprehension" of litigation by EDI necessary to invoke the jurisdiction of the court. The court finds that whether the court has jurisdiction to hear a declaratory judgment action seeking a declaration of invalidity and non-infringement is a matter involving questions within the exclusive jurisdiction of the Federal Circuit Court of Appeals rather than a general matter to be resolved according to the law of the regional circuit court of appeals. Therefore, the court will first examine the Federal Circuit's standards for jurisdiction over such declaratory judgment claims.

### 1. "Reasonable apprehension" of litigation

▇▇▇ The purpose of a declaratory judgment action is to permit a threatened party to resolve its potential liability, but only when the relationship has progressed to an actual controversy, as required by Article III of the U.S. Constitution. *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1053 (Fed.Cir.1995); *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed.Cir.1995) (also citing 28 U.S.C. § 2201(a), of the Declaratory Judgment Act, for this "actual controversy" requirement), *cert. denied,* —— U.S. ——, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996). The existence of a sufficiently concrete dispute between the parties remains a jurisdictional predicate to the vitality of a declaratory judgment action. *Super Sack,* 57 F.3d at 1058. Thus, in a declaratory judgment action seeking a declaration of invalidity and non-infringement of a patent, as with any other declaratory judgment action, the first question is whether there exists an "actual controversy." *DuPont Merck Pharm. Co. v. Bristol–Myers Squibb Co.,* 62 F.3d 1397, 1401 (Fed.Cir.1995) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937), and *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953 (Fed.Cir.1987)). The burden is on the declaratory plaintiff to establish that jurisdiction over its declaratory judgment action existed at the time of filing and has continued to exist to the time the court considers the claim. *Super Sack,* 57 F.3d at 1058.

▇▇▇ An "actual controversy" must be established on the "totality of the circumstances." *Super Sack,* 57 F.3d at 1058 (citing *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 634 (Fed.Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991)). The Federal Circuit Court of Appeals has a two-pronged test for evaluating the actual controversy requirements for declaratory judgment claims of patent non-infringement: (1) did the acts of the defendant indicate an intent to enforce its patent, and (2) did the plaintiff engage in an actual mak-

ing, selling, or using activity subject to an infringement charge or make meaningful preparation for such activity. *DuPont Merck*, 62 F.3d at 1401; *Super Sack*, 57 F.3d at 1058 (articulating the test as "both (1) an explicit threat or other action by the patentee, which creates a *reasonable* apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) *present* activity which could constitute infringement or concrete steps taken with the intent to conduct such activity," quoting *BP Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed.Cir.1993), and stating that the purpose of the test is specifically "to determine whether the need for judicial attention is real and immediate," and therefore presents a controversy over which the court has jurisdiction, or merely "prospective and uncertain of occurrence," in which case the court does not have jurisdiction); *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir.1995) (reversing the order, but not the content of the two prongs, articulating the test as "(1) the declaratory plaintiff has acted, or has made preparations to act, in a way that could constitute infringement, and (2) the patentee has created in the declaratory plaintiff a reasonable apprehension of suit for infringement," also citing *BP Chem. Ltd.*, 4 F.3d at 978).

▮ The *DuPont Merck* decision provides guidance on what sort of factual circumstances establish that the two prongs of this "actual controversy" test have been met:

First, [the patent holder] has threatened to bring patent infringement suits against generic drug manufacturers who attempt to market their products during the Delta period. [The patent holder's] policy, together with letters sent by [the patent holder] to [the declaratory plaintiffs] relating to the [patent in suit], create a reasonable apprehension on the part of [the declaratory plaintiffs] that they will face infringement suits if they amend their [abbreviated new drug applications] to include [certifications that their products do not infringe a valid patent]. Second, [the declaratory plaintiffs] have spent much money in preparation for the potentially infringing activity of submitting [abbrevi-

ated new drug applications].... Thus, the district court had jurisdiction over [the declaratory plaintiffs'] declaratory judgment action.

*DuPont Merck*, 62 F.3d at 1401. Here, the court finds that Parsons and Tyer may have established the second prong of the test, by investing substantial amounts of money in developing "redesigned" products to avoid infringing EDI's patents after the adverse judgment in the Texas litigation. *DuPont Merck*, 62 F.3d at 1401 (investment of "much money" in preparation of potentially infringing activity meets the second prong of the test of an actual controversy in a patent infringement declaratory judgment suit.). However, they have failed to establish the first prong of the test of an actual controversy.

▮ The first prong of the test articulated by the Federal Circuit Court of Appeals requires that the acts of the defendant indicate an intent to enforce its patent, for example, by actually threatening suit against the declaratory plaintiffs, such as by sending letters advising the declaratory plaintiffs that suit will follow unless they take or refrain from taking a certain course of action. *DuPont Merck*, 62 F.3d at 1401. Although explicit threats of suit are not necessarily required to invoke the jurisdiction of the court, to create an actual controversy, there must be more than on-going license negotiations or contact between the patent holder and the declaratory plaintiff. *Phillips Plastics*, 57 F.3d at 1053. What is clear, however, is that "[t]here must be action *by the patent holder* sufficient to create an objectively reasonable apprehension that suit will be brought against the declaratory plaintiff." *Id.* Thus, the declaratory plaintiff's subjective apprehension is not sufficient. *Id.* (citing *Indium Corp. of Am. v. Semi–Alloys, Inc.*, 781 F.2d 879, 883 (Fed.Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986)). Thus, "[t]he 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension." *Id.* at 1053–54. Furthermore, a patentee can divest the court of jurisdiction over a declaratory judgment ac-

tion "by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts, even when a reissue application covering the same claimed subject matter is then pending." *Super Sack,* 57 F.3d at 1058. This promise not to sue does not require a signed covenant, as was asserted by the declaratory plaintiff in *Super Sack* and as Parsons seems to assert here, but instead may take the form of statements of counsel in motion papers and briefs. *Id.* at 1059 ("Super Sack cannot free itself of the estoppel that its counsel has created with respect to Chase merely by retaining different counsel, and no rule of agency law with which we are familiar can relieve Super Sack of the estoppel on the ground that its current counsel acted *ultra vires....* Super Sack itself is bound, both now and in the future, by its promise not to sue Chase," and further rejecting a separation of justiciability as to invalidity and non-infringement).

As to both Tyer and Parsons, because there is no showing of a threat *from EDI* that it intends to enforce its patents against them, *see DuPont Merck,* 62 F.3d at 1401 (looking at actions of patent holder); *Phillips Plastics,* 57 F.3d at 1053 (same); *Super Sack,* 57 F.3d at 1058 (same); *Serco Servs. Co., L.P.,* 51 F.3d at 1038 (same), the court concludes that the declaratory judgment counterclaims are non-justiciable. Instead of actions by EDI creating an atmosphere in which suit appears likely, the record demonstrates that all suggestions that a suit is forthcoming, and indeed, all invitations for a lawsuit over the "redesigned products" comes not from EDI, but from Tyer. Tyer cannot generate a threat from EDI in order to establish jurisdiction over his declaratory judgment suit where EDI pronounces itself satisfied with the protections from infringement it has already obtained from the permanent injunction granted in the Texas litigation. Whatever his subjective fear of further litigation over his "redesigned" products, Tyer has not shown from the totality of the circumstances that his fear is objectively reasonable in light of EDI's refusal to be drawn into further litigation and assertions in this litigation that it is satisfied with the protections available

under the Texas injunction. *Phillips Plastics,* 57 F.3d at 1053 (declaratory plaintiff's subjective fear is insufficient to establish justiciability of the controversy). Furthermore, as to Parsons, EDI has offered a covenant not to sue for any past infringement that satisfies the requirements of *Super Sack. Super Sack,* 57 F.3d at 1058–59. EDI repeatedly asserted in briefs that it has no intention of suing Parsons for any past infringement as such claims are of de minimis value and no intention of suing anyone over "redesigned" products when the Texas injunction provides adequate protection. *Id.*

### 2. *Discretion to decline to hear declaratory judgment actions*

Even if a case satisfies the Federal Circuit's two-prong test of an actual controversy, "there is no absolute right to a declaratory judgment, for the statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances." *Serco Servs Co., L.P.,* 51 F.3d at 1039 (citing *Minnesota Mining & Mfg. Co. v. Norton Co.,* 929 F.2d 670, 672 (Fed.Cir. 1991)). Thus,

[t]he court must make a reasoned judgment whether the investment of time and resources will be worthwhile. Of course, the court's discretion is not unfettered: "An abuse of discretion may occur when the trial court's decision was based on an incorrect conclusion of law or clearly erroneous finding of fact, was devoid of any evidence in the record upon which the court rationally could have based its decision, or was clearly unreasonable or arbitrary." *Genentech [Inc. v. Eli Lilly & Co.],* 998 F.2d [931,] 936, 27 U.S.P.Q.2d [1241,] 1243 [ (Fed.Cir.1993), *cert. denied sub nom. Regents of Univ. of Cal. v. Genentech, Inc.,* 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994) ].

*Serco Servs. Co., L.P.,* 51 F.3d at 1039. Similar discretion not to hear a declaratory judgment action obtains when a non-patent claim, such as the one Tyer states, albeit vaguely, in

his second declaratory judgment counterclaim pertaining to business associations.[17]

The court reads all three counterclaims asserted here as raising challenges to or questions about the scope of the permanent injunction issued by the Texas court after an adjudication of validity and infringement of EDI's patents. Certainly, if Tyer and Parsons have complied with the terms of the Texas injunction against RTA, which would reach them as "officers, agents, servants, employees, and attorneys, [or] persons in active concert or participation with" RTA, *Fed.R.Civ.P.* 65(d), they would not need to fear any suit from EDI concerning either their original products or any "redesigned" products, and if they have not so complied, non-compliance is more properly adjudicated in a contempt action under the injunction. Furthermore, Tyer's assertions that new evidence undercuts the Texas court's determinations of patent validity, infringement, and the propriety and scope of any injunction are also better resolved, not by disregard of res judicata in this litigation, but by post-trial motions attacking the Texas decisions in Texas federal court. Therefore, in light of EDI's assertion that it has no intention of suing either counterclaim plaintiff when the Texas injunction provides it with all the protection it needs and out of deference to the Texas court's jurisdiction over the permanent injunction and right to revisit its own judgments upon proper post-trial motions, this court concludes that it should decline to entertain any of the counterclaims asserted in the answer to the Second Amended Complaint. Those counterclaims are consequently dismissed.

### III. CONCLUSION

Although the parties' arguments suggested this lawsuit raised the Hydra-headed terror of a multiplicity of patent law issues, each complicated by the applicability of res judicata arising from prior litigation in Texas, the court has, for the most part, found other and fewer issues dispositive of pending motions. The court has found that it must construe EDI's motions "for summary judgment" "dismissing" all claims against Parsons and RTA and all claims but one against Tyer as motions for voluntary dismissal. In the case of Parsons and RTA, because EDI seeks to dismiss all claims, the motions for voluntary dismissal are properly construed as made pursuant to *Fed.R.Civ.P.* 41(a)(2), and as to Tyer, because EDI seeks to dismiss only one of two claims, pursuant to *Fed.R.Civ.P.* 15. Finding these motions proper, the court dismisses all claims against RTA and Parsons and Count I, an infringement claim, against Tyer. Consequently, all dispositive motions involving affirmative defenses asserted by the defendants are denied as moot. This leaves for resolution only cross-motions concerning EDI's "alter ego" claim against Tyer, and Parsons's and Tyer's counterclaims.

The court finds that EDI is not entitled to summary judgment on its "alter ego" claim, because a genuine issue of material fact exists as to whether or not Tyer and RTA observed all of the corporate formalities and otherwise operated as separate entities. Finding this genuine issue of material fact sufficient to deny summary judgment, the court declines the parties' invitation to address whether the second element of an "alter ego" claim, a showing of "injustice" resulting from adherence to the corporate fiction, had been met. The court also finds that Tyer is not entitled to summary judgment on his cross-motion

---

**17.** Eighth Circuit Court of Appeals standards would presumably apply to this non-patent declaratory judgment claim. As the Eighth Circuit Court of Appeals has also observed, the Declaratory Judgment Act confers " 'unique and substantial discretion' " upon federal courts, including discretion whether to entertain, stay, or dismiss the action. *Horne v. Firemen's Retirement Sys. of St. Louis,* 69 F.3d 233, 236 (8th Cir.1995) (quoting *Wilton v. Seven Falls Co.,* — U.S. —, — & —, 115 S.Ct. 2137, 2139 & 2144, 132 L.Ed.2d 214 (1995)); *International Ass'n of En-* *trepreneurs of Am. v. Angoff,* 58 F.3d 1266, 1270 (8th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 774, 133 L.Ed.2d 726 (1996); *BASF Corp. v. Symington,* 50 F.3d 555, 557 (8th Cir.1995); *Employers Ins. of Wausau v. Missouri Elec. Works, Inc.,* 23 F.3d 1372, 1374 (8th Cir.1994) (noting that "[a] district court is not obligated to exercise jurisdiction in a diversity case brought under the Declaratory Judgment Act," citing *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), and discussing grounds for abstaining from considering such an action).

challenging the "alter ego" claim on the ground the claim is res judicata. Neither claim nor issue preclusion is applicable here, where the claims asserted in the Texas and Iowa lawsuits are not "the same cause of action," and where the issues involved in those claims are not identical. Furthermore, there was no final adjudication of any claim or issue, if the same or identical, on the merits in the Texas litigation. The Texas court denied EDI's motion to add Tyer as a defendant on a patent infringement claim after judgment of infringement had already been entered against RTA, but gave no reason for its denial. A discretionary ruling denying a procedural request is by no means an adjudication on the merits of any substantive claim or issues. Nor, in light of the laconic nature of the Texas court's denial of EDI's motion for leave to amend and the applicable standards for amendment, is it apparent that the Texas court actually and necessarily decided any issue involved here. Thus, Tyer's motion for summary judgment on Count II of the Second Amended Complaint is also denied.

Finally, the court turned to EDI's motion to dismiss the counterclaims of defendants Parsons and Tyer. As to the counterclaims seeking declarations of non-infringement and invalidity of patents, the court concludes that Tyer has established no reasonable apprehension of suit upon which to invoke the jurisdiction of this court. EDI is estopped to assert any infringement claims against Parsons by its repeated promises in response to pending motions that it has no intention of suing Parsons. Furthermore, any apprehension of suit is the product of actions by Tyer, not by EDI, which professes itself content to rely upon the injunction it obtained in the Texas litigation to protect its patents from any "redesigned" products Tyer may be offering for sale through Parsons or any other business associates. Furthermore, the court declines to exercise jurisdiction over any of the counterclaims, because it finds them to arise from questions about or challenges to the scope of the Texas injunction. Such questions are best left to the Texas court to adjudicate in the context of contempt proceedings. Finally, to the extent the counterclaims are attacks on the Texas judgments of validity and infringement, they are best determined upon post-judgment motions in Texas federal court. Thus, the only claim remaining for trial in this litigation is EDI's "alter ego" claim against Tyer.

More specifically,

**IT IS ORDERED THAT**

1. The stay on this litigation imposed as the result of Tyer's personal bankruptcy is lifted owing to the dismissal of Tyer's personal bankruptcy petition.

2. Defendant Tyer's March 12, 1996, motion to dismiss or in the alternative for summary judgment on Count II of the Second Amended Complaint (docket no. 63) is **denied.**

3. Defendants' March 12, 1996, motion for partial summary judgment and to bifurcate trial on inequitable conduct issues (docket no. 67) is **denied as moot.**

4. That part of plaintiff EDI's March 20, 1996, motion for partial summary judgment (docket no. 72), construed as a motion for voluntary dismissal pursuant to *Fed.R.Civ.P.* 41(a)(2) of all claims against defendant Parsons, is **granted.**

5. That part of plaintiff EDI's March 20, 1996, motion for partial summary judgment (docket no. 72), construed as a motion for voluntary dismissal of Count I against defendant Tyer by amendment pursuant to *Fed. R.Civ.P.* 15, is **granted.**

6. That part of plaintiff EDI's March 20, 1996, motion for partial summary judgment (docket no. 72), seeking summary judgment on Count II against defendant Tyer is **denied.**

7. Plaintiff EDI's March 25, 1996, motion to dismiss declaratory judgment counterclaims of defendants Tyer and EDI (docket no. 75) is **granted.**

8. Plaintiff EDI's May 13, 1996, supplemental motion for partial summary judgment against defendant Parsons (docket no. 95) is **denied as moot.**

9. Plaintiff EDI's May 16, 1996, motion for summary judgment against defendant RTA (docket no. 97), construed as a motion

for voluntary dismissal of all claims against defendant RTA pursuant to *Fed.R.Civ.P.* 41(a)(2), is **granted.**

10. Plaintiff EDI's May 16, 1996, motion for partial summary judgment dismissing inequitable conduct claims (docket no. 101) is **denied as moot.**

11. The remaining "alter ego" claim will proceed to trial on September 23, 1996, in Fort Dodge, Iowa.

**IT IS SO ORDERED.**